## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| ESTATE OF MARY J. WOBSCHALL, By Special Administrator, RONALD I. WOBSCHALL<br>1428 Partridge Court<br>West Bend, Wisconsin 53095,<br><br>      Plaintiff,<br><br>v.<br><br>DAVE ROSS, in his official capacity as Secretary of the Wisconsin Department of Transportation<br>4822 Madison Yards Way<br>Madison, Wisconsin 53705,<br><br>CRAIG THOMPSON, in his official capacity as Secretary-Designee of the Wisconsin Department of Transportation<br>4822 Madison Yards Way<br>Madison, Wisconsin 53705,<br><br>KRISTINA BOARDMAN, in her official capacity as Administrator of the Wisconsin Division of Motor Vehicles<br>4822 Madison Yards Way<br>Madison, Wisconsin 53705,<br><br>      Defendants. | Case No:<br><br>**COMPLAINT**<br><br>**Civil Rights Action:**<br><br>**The Americans With Disabilities Act, as Amended**<br><br>**The Rehabilitation Act, as Amended**<br><br>**14th Amendment to U.S. Constitution (Due Process)**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

NOW COMES Plaintiff, Estate of Mary J. Wobschall, by its Special Administrator, Ronald I. Wobschall ("Ronald I. Wobschall" and "Mr. Wobschall"), on behalf of the Decedent, Mary J. Wobschall ("Decedent, Mary J. Wobschall" and "Mrs. Wobschall") (collectively "Plaintiff"), by and through its undersigned counsel, Hupy and Abraham, S.C., by Todd R. Korb, bring this Complaint against Defendant Dave Ross, in his official capacity as Secretary of the Wisconsin Department of Transportation ("WisDOT") ("Secretary Ross"); Defendant Craig Thompson, in

his official capacity as Secretary-Designee of the WisDOT ("Secretary-Designee Thompson"); Defendant Kristina Boardman, in her official capacity as Administrator of the Wisconsin Division of Motor Vehicles ("DMV") at WisDOT; ("theWisDOT/DMV Defendants") (collectively, "Defendants").

Plaintiff alleges upon knowledge as to its own conduct and observations and upon information and belief as to the conduct of others:

## NATURE OF THE ACTION

1. This action seeks monetary relief against the Wisconsin state officials, WisDOT, and DMV for depriving Decedent, Mary J. Wobschall, use of her cane and mobility device while she was located on and within a WisDOT and DMV facility in West Bend, Wisconsin, as well as for WisDOT and DMV's discriminatory licensing policy and practice in denying Decedent, Mary J. Wobschall, use of her cane and mobility device while she attempted to renew her operator's license. These discriminatory actions denied Decedent, Mary J. Wobschall, meaningful access to and participation in the WisDOT and DMV's services, programs, and activities.

2. This lawsuit seeks a declaratory judgment that when WisDOT and DMV deprived Decedent, Mary J. Wobschall, use of her cane and mobility device while she was located within a DMV facility in West Bend, Wisconsin, the WisDOT and DMV violated Mary J. Wobschall's fundamental rights in her driver's license, rights in her ability to drive legally, rights in her personal property and to use her cane and mobility device, rights in access to public services, programs, and activities, and rights to freedom of movement and mobility under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

3. This lawsuit seeks a declaratory judgment that the WisDOT and DMV's policy and/or practice, written or otherwise, requiring Mrs. Wobschall to demonstrate that she was able

2

to walk without use of a cane or other mobility device for licensing purposes is unconstitutional as applied to Mary J. Wobschall, a qualified individual with a disability. This policy and practice impose a severe and undue burden on the fundamental rights of obtaining a driver's license, rights in the ability to drive legally, rights in personal property, rights in access to public services, programs, and activities, and rights to freedom of movement and mobility under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

4.     Plaintiff brings this action under the Americans with Disabilities Act, as Amended ("Title II of the ADA", "Title II", and "ADA"), 42 U.S.C. § 12101, et seq., as well as Section 504 of the Rehabilitation Act of 1973, as Amended ("Section 504" or "Rehabilitation Act"), 29 U.S.C. § 794, to remedy Defendants' failure to provide meaningful access to and participation in the WisDOT and DMV's services, programs, and activities and to remedy Defendants' denial and deprivation of a cane and mobility device against a qualified individual with a disability while that individual was located on and within the WisDOT and DMV's facilities and premises.

5.     Plaintiff also brings this action under the Fourteenth Amendment to the U.S. Constitution, to remedy the deprivation of Decedent, Mary J. Wobschall's fundamental liberty interests and her rights not to be subject to discriminatory action, animus, conduct, policy, and practice because of her status as a qualified individual with a disability who used a cane and mobility device to aid her in walking and standing.

6.     Plaintiff seeks monetary and declaratory relief for the unconstitutional, unlawful, and discriminatory action, animus, conduct, policy, and practice to which Decedent, Mary J. Wobschall, was subject.

3

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §§ 1343 (civil rights).

8.     Venue is laid within the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this district.

## PARTIES

9.     The Decedent, Mary J. Wobschall, was an adult resident of the City of West Bend, County of Washington, Wisconsin, who resided at 1428 Partridge Court, Zip Code 53095; and that Ronald I. Wobschall has been appointed Special Administrator for the Estate of Mary Wobschall.

10.     The Plaintiff, Ronald I. Wobschall, is an adult resident of the City of West Bend, County of Washington, Wisconsin, currently residing at 1428 Partridge Court, Zip Code 53095; and that the Plaintiff, Ronald I. Wobschall was the husband of the Decedent, Mary Wobschall.

11.     The Defendant, Dave Ross, was the Secretary of WisDOT on or about June 11, 2018. WisDOT, with offices of its executive located at 4822 Madison Yards Way, Madison, Wisconsin, Zip Code 53705, is and was at all times material hereto, an agency of the State of Wisconsin. Secretary Ross supervised and had authority over the activities of WisDOT, including issuing driving privileges to Wisconsin residents. As part of his duties, Secretary Ross supervised the Administrator of the Wisconsin Division of Motor Vehicles. The Wisconsin Division of Motor Vehicles is responsible for issuing driving privileges to Wisconsin residents. Secretary Ross is sued in his official capacity.

12.     The Defendant, Craig Thompson, is the current Secretary-Designee of the WisDOT. WisDOT, with offices of its executive located at 4822 Madison Yards Way, Madison,

4

Wisconsin, Zip Code 53705, is and was at all times material hereto, an agency of the State of Wisconsin. Secretary-Designee Thompson supervises and has authority over the activities of WisDOT, including issuing driving privileges to Wisconsin residents. As part of his duties, Secretary Ross supervised the Administrator of the Wisconsin DMV. The Wisconsin DMV is responsible for issuing driving privileges to Wisconsin residents. Secretary-designee Thompson is sued in his official capacity.

13. The Defendant, Kristina Boardman, is the Administrator of the Wisconsin DMV. The Wisconsin DMV, with offices of its executive located at 4822 Madison Yards Way, Madison, Wisconsin, Zip Code 53705, is and was at all times material hereto, an agency of the State of Wisconsin. Administrator Boardman supervises and is responsible for the activities, policies, and practices of the DMV, including the issuance and renewal of driving privileges to Wisconsin residents. She is sued in her official capacity.

## GENERAL FACTUAL ALLEGATIONS

14. On or about June 11, 2018, the Decedent, Mary J. Wobschall, was a 78-year-old resident of West Bend, Wisconsin, who was married to Ronald I. Wobschall, an 80-year-old resident of West Bend, Wisconsin.

15. On or about June 11, 2018, Mrs. Wobschall, along with her husband, Mr. Wobschall, arrived at the DMV located at 1516 West Paradise Drive, in the City of West Bend, County of Washington, Wisconsin, Zip Code 53095 ("West Bend DMV"), for the purpose of renewing her valid driver's license. At that time, Mrs. Wobschall had approximately 60 years of licensed driving experience in the United States. In those approximate 60 years, Mrs. Wobschall never had her license, ID car, or operating privileges revoked, suspended, cancelled, disqualified, or denied.

5

16.     Prior to their arrival on June 11, 2018, Mrs. Wobschall undertook affirmative steps in preparation for renewing her valid driver's license. On or about May 20, 2018, Mrs. Wobschall underwent an eyesight examination with a duly licensed optometrist pursuant to Wis. Stat. § 343.16(3); the optometrist opined that Mrs. Wobschall did not require corrective lenses while driving, did not have any eye diseases or cataracts, and did not require any driving restrictions.

17.     When Mr. and Mrs. Wobschall arrived at the West Bend DMV on June 11, 2018, Mrs. Wobschall used a cane to aid and assist herself in walking and standing. Mrs. Wobschall had previously undergone knee replacement surgeries in both knees several years prior, which gave her pain. This cane was Mrs. Wobschall's personal property.

18.     While at the West Bend DMV, Mrs. Wobschall applied for a renewal of her valid driver's license. Mrs. Wobschall followed all steps, processes, policies, and procedures that were required by the DMV and asked of her by DMV employees in order to renewal a driver's license.

19.     While Mrs. Wobschall was undergoing the process to renew her valid driver's license, Jane Doe, a WisDOT and DMV employee and licensing examiner located at or near Station Number One inside of the West Bend DMV facility, instructed Mrs. Wobschall that she must walk to a chair located in an area for pedestrian use without the aid of her cane.

20.     Mr. Wobschall protested and asked Jane Doe why his wife, Mrs. Wobschall, needed to walk without the aid of her cane. Mr. Wobschall also asked Jane Doe how Mrs. Wobschall walking without the aid of her cane related to the renewal of Mrs. Wobschall's license.

21.     Jane Doe refused to answer Mr. Wobschall's questions. Instead, Jane Doe deprived Mrs. Wobschall use of her cane. Jane Doe mandated, "Have her walk without her cane."

22.     Mrs. Wobschall complied with Jane Doe's instruction and requirement because she wanted to receive a renewal her driver's license from the DMV. Mrs. Wobschall attempted to

6

walk from the area located immediately in front of Station Number One to a chair located away from Station Number One in the waiting section without the assistance of her cane.

23.     At all times material hereto, Mrs. Wobschall's path of travel where she attempted to walk after being denied the use of her cane was located within WisDOT and DMV's facility and in an area open to pedestrian and public use.

24.     As a direct and proximate cause of Jane Doe's denial and deprivation of Mrs. Wobschall's cane—her personal property and mobility device, Mrs. Wobschall fell when she attempted to walk without the aid of her cane.

25.     After falling, Mrs. Wobschall lay down on the floor in severe pain, embarrassment, and humiliation. Mr. Wobschall then assisted her into a chair located nearby.

26.     At all times material hereto, Jane Doe never inquired into Mrs. Wobschall's fall and subsequent injury; Jane Doe also never asked if she needed aid or assistance after she fell.

27.     Instead, Jane Doe denied Mrs. Wobschall's license renewal. Jane Doe gave Mr. and Mrs. Wobschall a WisDOT/DMV form entitled, "medical examination report (MV3466)." This MV3466 form was partially completed by Jane Doe. On the MV3466 form, Jane Doe wrote that Mrs. Wobschall was required to undergo a "general medical" examination "due to fall at DMV + confusion." Jane Doe instructed Mr. and Mrs. Wobschall that Mrs. Wobschall needed to complete this form in order for Mrs. Wobschall to be approved for a renewal of her driver's license. According to WisDOT and DMV policies, procedures, and practices, Jane Doe was required to write her WisDOT Examiner Badge Number on the MV3466 form in the area designated "DOT Examiner Badge Number," but Jane Doe intentionally omitted this information from the MV3466 form in violation of WisDOT and DMV's policies, procedures, and practices, written or otherwise.

28.     Jane Doe intentionally denied Mrs. Wobschall a temporary license to operate a motor vehicle because Jane Doe regarded Mrs. Wobschall as having an actual or perceived physical impairment because Mrs. Wobschall's used her cane to aid and assist herself in walking and standing.

29.     In addition to denying a renewal of Mrs. Wobschall's license and giving her the medical examination report MV3466 form, Jane Doe instructed Mr. Wobschall and Mrs. Wobschall that Mrs. Wobschall had until her birthday on June 31, 2018 to return to the West Bend DMV and renew her license.  Because of Jane Doe's denial of both a license renewal and temporary license, Mrs. Wobschall had only approximately 20 days before her valid driving privileges would be revoked, suspended, cancelled, disqualified, and/or denied.

30.     Soon thereafter, emergency service personnel arrived at the West Bend DMV.

31.     Mrs. Wobschall declined the medical attention offered by the emergency service personnel at the West Bend DMV.  Instead, Mr. Wobschall helped Mrs. Wobschall return to their vehicle, and Mr. Wobschall drove Mrs. Wobschall to the medical clinic located across the street from the West Bend DMV.

32.     Under Wisconsin law, Wisconsin Chapter 343 specifies the authority of the DMV regarding the issuance of driving licenses and Wisconsin Chapter Trans 112 governs the medical standards for driver licensing.  Significantly, there is no legislative statutory provision under any Wisconsin law that grants the WisDOT and DMV the authority to require a license issuance applicant or license renewal applicant to demonstrate an ability to walk without the aid of any mobility device, such as a cane, walker, or wheelchair, in order to receive an issuance or renewal of a license.  Instead, under Wis. Stat. §§ 343.16(1) and 343.16(3), the only examination that an applicant may be subject to at the time of a license renewal application while physically located at

8

the DMV's facilities is an examination of eyesight. Furthermore, if the DMV examiner requires a license renewal applicant to undergo a medical examination with a licensed medical professional, the DMV is required to issue a temporary license to operate a motor vehicle to the license renewal applicant that is valid for sixty days at the time the DMV requests the examination, pursuant to Wis. Stat. § 343.165(6)(b).

33.     Jane Doe did not issue a temporary license to operate a motor vehicle to Mrs. Wobschall on or about June 11, 2018 in violation of Wis. Stat. § 343.165(6)(b). Because of Jane Doe's denial of a temporary license, Mrs. Wobschall had only approximately 20 days before her valid driving privileges would be revoked, suspended, cancelled, disqualified, and/or denied.

34.     Jane Doe intentionally denied Mrs. Wobschall a license renewal and a temporary license to operate a motor vehicle because Jane Doe regarded Mrs. Wobschall as having an actual or perceived physical impairment because of Mrs. Wobschall's use of her cane.

35.     Jane Doe harbored animus towards Mrs. Wobschall because Jane Doe regarded Mrs. Wobschall as having an actual or perceived physical impairment because of Mrs. Wobschall's use of her cane.

36.     Mrs. Wobschall's deprivation of her cane and subsequent fall at the West Bend DMV caused her emotional and physical injuries, including, but not limited to, a left distal radius fracture (left fractured wrist), left knee contusions, left shoulder pain, left arm pain, left hand pain, physical pain and suffering, emotional pain and suffering, medical expenses. mental anguish, fright and shock, disability, denial of social pleasures and enjoyments, embarrassment, humiliation, mortification, indignity, and emotional distress.

37.     As a result of her injuries, Mrs. Wobschall underwent surgery on or about June 15, 2018 to repair her left distal radius fracture (left fractured wrist); namely, an open reduction

9

internal fixation, including the implantation of a plate and screws. Mrs. Wobschall subsequently underwent physical therapy and occupational therapy for her left shoulder, arm, and wrist injuries.

38.     On or about June 20, 2018, Mr. Wobschall returned to the West Bend DMV in an attempt to obtain the name of Jane Doe, the DMV employee and licensing examiner located at Station Number One who denied Mary Wobschall the use of her cane as described herein. While at the West Bend DMV, Mr. Wobschall spoke to an unidentified DMV employee and manager, Jane Doe No. 2, who refused to give Mr. Wobschall the name or identity of Jane Doe.

39.     Jane Doe and Jane Doe No. 2's conduct, actions, and omissions described herein constitute an intentional concealment of Jane Doe's identity.

40.     As a direct and proximate result of Jane Doe and Jane Doe No. 2's conduct, actions, and omissions described herein, Plaintiff does not know the names or identities of WisDOT and DMV employees, Jane Doe and Jane Doe No. 2.

41.     Upon information and belief, Defendants WisDOT and DMV have a policy, procedure, or practice, written or otherwise, in which any individual who utilizes a mobility device, such as a walker, crutches, a cane, braces, or other similar devices, must demonstrate an ability to walk without the assistance of said mobility device while at a WisDOT and DMV facility in the presence of a DMV license examiner in order for an applicant to be issued a driver's license or receive a renewal of a driver's license.

42.     This policy, procedure, or practice as described herein is also utilized by Defendants to determine whether an individual who uses a mobility device as described herein will be required to undergo a medical examination prior to the issuance or renewal of a driver's license.

10

43.    A DMV license examiner employed by Defendants is not a physician, physician assistant, or advanced practice nurse prescriber licensed by the State of Wisconsin.

44.    A DMV license examiner employed by Defendants is not qualified to make a determination of whether an individual has a medical condition, impairment, or disability.

45.    A DMV license examiner employed by Defendants is not qualified to make a determination of whether an individual is able to exercise ordinary and reasonable control in the operation of a motor vehicle.

46.    A DMV license examiner employed by Defendants is not qualified to make a determination of whether an individual possesses a physical condition, impairment, or disability that might prevent such individuals from exercising reasonable and ordinary control in the operation of a motor vehicle.

47.    This policy, procedure, or practice, and whether an individual is able to demonstrate the ability to walk without the assistance of a mobility device as described herein, has no relation to whether an individual is able to exercise ordinary and reasonable control in the operation of a motor vehicle.

48.    It is unlawful and unconstitutional for Defendants to determine whether a license applicant should submit to a medical examination by utilizing criteria that requires an individual with a disability to demonstrate the ability to walk without the assistance of a mobility device as more fully described herein.

49.    It is unlawful and unconstitutional to deny the issuance or renewal of a driver's license without issuing a temporary license to an individual with a mobility impairment simply because that individual is unable to walk without the assistance of a mobility device as more fully described herein.

11

## FIRST CLAIM FOR RELIEF:
### Violations of the Americans with Disabilities Act, as Amended

50.     Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs as if fully set forth herein.

51.     Title II of the ADA prohibits Defendants from discriminating against individuals with disabilities by excluding them from participation in or denying the benefits of Defendants' services, programs, or activities, or otherwise subject individuals with disabilities to discrimination. 42 U.S.C. § 12132; 28 C.F.R. Part 35.

52.     Title II also requires that "[a] public entity shall permit individuals with mobility disabilities to use wheelchairs and manually-powered mobility aids, such as walkers, crutches, canes, braces, or other similar devices designed for use by individuals with mobility disabilities, in any areas open to pedestrian use." 28 C.F.R. § 35.137(a).

53.     Title II also requires that "[a] public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability. . . [d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service. . . [a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others. . . [o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service." 28 C.F.R. § 35.130(b)(1).

54.     Title II also requires that "[a] public entity may not deny a qualified individual with a disability the opportunity to participate in services, programs, or activities that are not separate or different, despite the existence of permissibly separate or different programs or activities." 28 C.F.R. § 35.130(b)(2).

12

55.     Title II also requires that "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration. . . [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(3).

56.     Title II also requires that "[a] public entity may not administer a licensing. . . program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(6).

57.     Title II also requires that "[a] public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity." 28 C.F.R. § 35.130(b)(8).

58.     Title II also requires that "[n]o qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.130(a).

59.     Defendants regarded Mrs. Wobschall as having an actual or perceived physical impairment because she used a cane to aide herself in walking and standing.

60.     Mrs. Wobschall was a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2) and 28 C.F.R. § 35.104.

61.     Mrs. Wobschall is qualified to receive the services, programs, and activities offered by Defendants.

13

62.    Defendants WisDOT and DMV are public entities covered by Title II of the ADA.
42 U.S.C. § 12131(1)(B).

63.    Defendants Secretary Ross, Secretary-Designee Thompson, and Administrator
Boardman are responsible for the operation of public entities covered by Title II of the ADA.  42
U.S.C. § 12131(1)(B).

64.    Mrs. Wobschall's cane constituted a "mobility device" within the meaning of Title
II of the ADA.  28 C.F.R. § 35.137(a).

65.    Defendants were obligated under the ADA to permit Mrs. Wobschall, as an
individual with a mobility impairment, to use her cane in any areas open to pedestrian use within
the Defendants' facilities.

66.    Defendants have failed to meet this obligation.  Defendants have denied and
deprived Mrs. Wobschall use of her cane and mobility device while in the Defendants' facility in
an area open to pedestrian use, as more fully described herein.

67.    Defendants' denial and deprivation of Mrs. Wobschall's cane and mobility device
caused Mrs. Wobschall to be denied meaningful access to Defendants' facilities, programs, and
services.

68.    Defendants were obligated under the ADA to provide and administer WisDOT and
DMV's benefits or services in such a manner that enabled Mrs. Wobschall to participate in the
benefit or service and to enjoy the same rights, privileges, advantages, and opportunities enjoyed
by others receiving the benefits or services of the WisDOT and DMV.

69.    Defendants were obligated under the ADA to not to utilize criteria or methods of
administration that subjected Mrs. Wobschall to discrimination on the basis of disability.

14

70.     Defendants were obligated under the ADA not to administer its state licensing program and not to establish requirements for its licensing programs or activities in a manner that subjected Mrs. Wobschall to discrimination on the basis of disability.

71.     Defendants were obligated under the ADA not to exclude Mrs. Wobschall from participation in and not to deny Mrs. Wobschall the benefits of the WisDOT and DMV's services, programs, or activities, or otherwise subject Mrs. Wobschall to discrimination.

72.     Defendants have failed to meet these obligations under the ADA.  By denying and depriving Mrs. Wobschall use of her cane and mobility device and cane and requiring that Mrs. Wobschall walk without the assistance of her cane and mobility device, as well as by denying Mrs. Wobschall a renewal of her license and denying a temporary license, Defendants have administered, utilized methods of administration, and established requirements for its state licensing program and activities that subjected Mrs. Wobschall to discrimination on the basis of disability.  Mrs. Wobschall has been denied enjoyment of the same rights, privileges, advantages, and opportunities enjoyed by others who seek to obtain or renew their driver's licenses in that others who do not use a cane or other mobility device are able to obtain and/or renew their driver's license without having to demonstrate an ability to walk.

73.     Defendants' prohibited conduct, actions, and omissions occurred because Jane Doe regarded Mrs. Wobschall as having an actual or perceived physical impairment because Mrs. Wobschall's used her cane to aid and assist herself in walking and standing.

74.     As a direct and proximate result of the all of the above unconstitutional and unlawful policies, practices, actions, omissions, and conduct of Defendants, Mrs. Wobschall has suffered damages, including but not limited to, personal injuries, including but not limited to: injury to her body, physical pain and suffering, emotional pain and suffering, medical expenses,

15

mental anguish, fright and shock, disability, denial of social pleasures and enjoyments, embarrassment, humiliation, mortification, indignity, and emotional distress.

75.     The actions, omissions, and conduct of Defendants were intentional, willful, wanton, malicious, and oppressive and done with conscious disregard and deliberate indifference for Mrs. Wobschall and her rights.

76.     Defendants' actions, inactions, policies, procedures, and practices constitute discrimination in violation of Title II of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq., and its implementing regulations, 28 C.F.R. Part 35.

77.     Defendants WisDOT and DMV are liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered in this action because any individual employees of said Defendants were acting within the scope of their employment when the unlawful and unconstitutional conduct, actions, and omissions occurred as described herein.

**SECOND CLAIM FOR RELIEF:**
**Violations of the Rehabilitation Act, as Amended**

78.     Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs as if fully set forth herein.

79.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be the denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

80.     Section 504 also requires that "[n]o qualified handicapped person shall, solely on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination." 28 C.F.R. § 42.503(a).

16

81.     Section 504 also requires that "[a] recipient may not discriminate on the basis of handicap in the following ways directly or through contractual, licensing, or other arrangements under any program or activity receiving Federal financial assistance. . . [d]eny a qualified handicapped person the opportunity accorded others to participate in the program or activity receiving Federal financial assistance. . . [d]eny a qualified handicapped person an equal opportunity to achieve the same benefits that others achieve in the program or activity receiving Federal financial assistance. . . [p]rovide different or separate assistance to handicapped persons or classes of handicapped persons than is provided to others unless such action is necessary to provide qualified handicapped persons or classes of handicapped persons with assistance as effective as that provided to others. . . [d]eny a qualified handicapped person an equal opportunity to participate in the program or activity by providing services to the program. . . [i]ntimidate or retaliate against any individual, whether handicapped or not, for the purpose of interfering with any right secured by [S]ection 504 or this subpart. . ." 28 C.F.R. § 42.503(b)(1).

82.     Section 504 also requires that "[a] recipient may not, directly or through contractual, licensing, or other arrangements, utilize criteria or methods of administration that either purposely or in effect discriminate on the basis of handicap. . ." 28 C.F.R. § 42.503(b)(3).

83.     Section 504 also requires that "[r]ecipients shall insure that no qualified handicapped person is denied the benefits of, excluded from participation in, or otherwise subjected to discrimination under any program or activity receiving Federal financial assistance because the recipient's facilities are inaccessible to or unusable by handicapped persons." 28 C.F.R. § 42.520.

17

84.     Section 504 also requires that "[a] recipient shall operate each program or activity. . . so that when each part is viewed in its entirety it is readily accessible to and usable by handicapped persons. . ." 28 C.F.R. § 42.521(a).

85.     Section 504 also requires that "[e]ach new facility constructed by, on behalf of, or for the use of a recipient shall be designed and constructed in such a manner that the facility is readily accessible to and usable by handicapped persons. . . [a]ny alterations to existing facilities shall, to the maximum extent feasible, be made in an accessible manner." 28 C.F.R. § 42.522(a).

86.     Section 504 also protects against other specific forms of discrimination which are not expressly enumerated in Section 504 or its implementing regulations. 28 C.F.R. § 42.503(g).

87.     Defendants regarded Mrs. Wobschall as having an actual or perceived physical impairment because she used a cane to aide herself in walking and standing.

88.     Mrs. Wobschall is a qualified individual with a disability within the meaning of 29 U.S.C. § 705(20), and a qualified handicapped person within the meaning of 28 C.F.R. §§ 42.540(k)-(l).

89.     Defendants WisDOT and DMV are programs and conduct activities which receive federal financial assistance.

90.     Defendants Secretary Ross, Secretary-Designee Thompson, and Administrator Boardman are responsible for programs and activities receiving federal financial assistance.

91.     Defendants were obligated under Section 504 to insure that Mrs. Wobschall, as a handicapped individual with a mobility impairment, was not denied the benefits of, excluded from participation in, or otherwise subjected to discrimination under any of Defendants' programs or activities because Defendants' facilities were inaccessible to or unusable by Mrs. Wobschall.

18

92. Defendants have failed to meet this obligation. Defendants denied and deprived Mrs. Wobschall use of her cane and mobility device while in the Defendants' facility in an area open to pedestrian use, as more fully described herein.

93. Defendants' denial and deprivation of Mrs. Wobschall's cane and mobility device while she was located in the Defendants' facility has caused Mrs. Wobschall to be denied meaningful access to and participation in Defendants' facilities, programs, services, and activities.

94. Defendants were obligated under Section 504 to not to utilize criteria or methods of administration that subjected Mrs. Wobschall to discrimination on the basis of handicap.

95. Defendants were obligated under Section 504 not to administer its state driver's licensing program and not to establish requirements for its driver's licensing programs or activities in a manner that subjected Mrs. Wobschall to discrimination on the basis of handicap.

96. Defendants were obligated under Section 504 not to exclude Mrs. Wobschall from participation in and not to deny Mrs. Wobschall the benefits of the WisDOT and DMV's services, programs, or activities, or otherwise subject Mrs. Wobschall to discrimination because the Defendants' facilities were inaccessible to or unusable by handicapped persons.

97. Defendants have failed to meet these obligations under Section 504. By denying and depriving Mrs. Wobschall use of her cane and mobility device and cane and requiring that Mrs. Wobschall walk without the assistance of her cane and mobility device, as well as by denying Mrs. Wobschall a renewal of her license and denying a temporary license as described herein, Defendants have administered, utilized methods of administration, and established requirements for its state licensing program and activities that subjected Mrs. Wobschall to discrimination on the basis of disability and handicap. Mrs. Wobschall has been denied enjoyment of the same rights, privileges, advantages, and opportunities enjoyed by others who seek to obtain or renew their

19

driver's licenses in that others who do not use a cane or other mobility device are able to obtain and/or renew their driver's license without having to demonstrate an ability to walk.

98.     Defendants' prohibited actions, inactions, policies, procedures, and practices occurred because of an actual or perceived physical impairment on the part of Mrs. Wobschall because she utilized a cane to assist her in walking and standing.

99.     As a direct and proximate result of the all of the above unconstitutional and unlawful policies, practices, actions, omissions, and conduct of Defendants, Mrs. Wobschall has suffered damages, including but not limited to, personal injuries, including but not limited to: injury to her body, physical pain and suffering, emotional pain and suffering, medical expenses, mental anguish, fright and shock, disability, denial of social pleasures and enjoyments, embarrassment, humiliation, mortification, indignity, and emotional distress.

100.    The actions, omissions, and conduct of Defendants were intentional, willful, wanton, malicious, and oppressive and done with conscious disregard and deliberate indifference for Mrs. Wobschall and her rights.

101.    Defendants' actions, inactions, policies, procedures, and practices constitute discrimination in violation of Section 504 of the Rehabilitation Act, as amended, 29 U.S.C. § 794, and its implementing regulations, 28 C.F.R. Part 42.

102.    Defendants WisDOT and DMV are liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered in this action because any individual employees of said Defendants were acting within the scope of their employment when the unlawful and unconstitutional conduct, actions, and omissions occurred as described herein.

20

## THIRD CLAIM FOR RELIEF:
## Fourteenth Amendment to the United States Constitution (Due Process Violations)

103.    Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs as if fully set forth herein.

104.    The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall … deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1.

105.    The Fourteenth Amendment protects against government conduct that infringes on fundamental rights and liberties. U.S. Const. amend. XIV, §1.

106.    Mrs. Wobschall had fundamental property and liberty interests protected by the Due Process Clause that include, but are not limited to, rights in her driver's license, rights in her ability to drive legally, rights in her personal property—her cane and mobility device—and use of her personal property, rights in access to public services, programs, and activities, and rights to freedom of movement and mobility.

107.    The conduct, acts, omissions, policies, and practices of Defendants as alleged above constituted violations of constitutional rights of Mrs. Wobschall, and Defendants could not reasonably have thought that their conduct in intentionally denying and depriving Mrs. Wobschall of her personal property, cane, and mobility device as alleged herein was consistent with Mrs. Wobschall's constitutional rights. These acts, conduct, omissions, policies, and practices are not narrowly tailored to serve any compelling state interest, nor are they reasonably and necessarily related to any legitimate governmental interest.

108.    The Defendants' denial and deprivation of Mrs. Wobschall's cane, mobility device, and personal property shocks the contemporary conscience.

109. As a direct and proximate result of the all of the above unconstitutional and unlawful policies, practices, actions, omissions, and conduct of Defendants, Mrs. Wobschall has suffered damages, including but not limited to, personal injuries, including but not limited to: injury to her body, physical pain and suffering, emotional pain and suffering, medical expenses, mental anguish, fright and shock, disability, denial of social pleasures and enjoyments, embarrassment, humiliation, mortification, indignity, and emotional distress.

110. The actions, omissions, and conduct of Defendants were intentional, willful, wanton, malicious, and oppressive and done with conscious disregard and deliberate indifference for Mrs. Wobschall and her rights.

111. The conduct, acts, and omissions alleged herein constitute violations of Mrs. Wobschall's federal rights as protected by the Fourteenth Amendment to the Constitution of the United States and by other federal law.

112. Defendants WisDOT and DMV are liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered in this action because any individual employees of said Defendants were acting within the scope of their employment when the unlawful and unconstitutional conduct, actions, and omissions occurred as described herein.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully request this Court enter a judgment in Plaintiff's favor against the Defendants, jointly and severally, and award Plaintiff as follows:

a. Award compensatory damages pursuant to the Americans with Disabilities Act, as amended, and the Rehabilitation Act, as amended, in an amount to be determined at a trial of this matter;

22

b.  Pursuant to Rule 57 of the Federal Rules of Civil Procedure, enter an order declaring Defendants' conduct as alleged herein unconstitutional and unlawful under the Fourteenth Amendment to the United States Constitution, the Americans with Disabilities Act, as amended, and the Rehabilitation Act, as amended;

c.  Award reasonable attorney fees, costs, and disbursements pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, 29 U.S.C. §794(a), and other applicable law; and

d.  Order such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED at Milwaukee, Wisconsin, this 6th day of December, 2019.

*s/ Todd R. Korb*

Todd R. Korb
State Bar Number: 1026950
Attorney for Plaintiff
HUPY AND ABRAHAM, S.C.
111 East Kilbourn Avenue, Suite 1100
Milwaukee, WI 53202
Telephone: (414) 223-4800
Fax: (414) 271-3374
E-mail: TKorb@hupy.com

23