IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ESTATE OF MARY J. WOBSCHALL,
BY SPECIAL ADMINISTRATOR,
RONALD I. WOBSCHALL,

        Plaintiff,

    v.                            Case No. 19-CV-1796

DAVE ROSS, et al.,

        Defendants.

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## THE AMENDED COMPLAINT

Plaintiff, Estate of Mary J. Wobschall, filed this lawsuit against the Wisconsin Department of Transportation (WisDOT), the Division of Motor Vehicles (DMV), former Secretary of WisDOT Dave Ross, Secretary-Designee of WisDOT Craig Thompson, and Administrator of the Division of Motor Vehicles (DMV) Kristina Boardman, in their official capacities. The Estate alleges that Mrs. Wobschall fell and injured herself at the DMV on June 11, 2018. The amended complaint alleges violations of Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and the Fourteenth Amendment (presumably under Title 42 U.S.C. § 1983). The defendants move the Court for dismissal of all claims.

For the Fourteenth Amendment Section 1983 claim, the State and its agencies have Eleventh Amendment immunity from such claims. The three individually named defendants are sued in their official capacities only; an official capacity claim

is a claim against the state and can only move forward under Section 1983 if the plaintiff seeks prospective injunctive relief from a person with authority to provide that relief. Because Mary Wobschall is deceased, her Estate lacks standing to bring a claim for prospective injunctive relief because there is no ongoing violation of Mary Wobschall's rights and no possibility that Mary Wobschall's rights will be violated in the future. If the Court construes the Section 1983 claims to be against the individually named defendants in their personal capacities, the claim still must be dismissed because the Estate failed to state a constitutional claim under the Fourteenth Amendment, and, even if it had, the Estate failed to allege the three supervisory officials' direct, personal involvement in any alleged constitutional deprivation.

The claim under Title II of the ADA must be dismissed for similar reasons. The State has Eleventh Amendment immunity from claims for damages under Title II of the ADA, unless the plaintiff alleges conduct that violates the Constitution. The Estate also lacks standing to bring a claim for injunctive and declaratory relief under the ADA.

The claim under the Rehabilitation Act must also be dismissed because the allegations in the complaint do not state a prima facie case. To the contrary, the allegations show that Mrs. Wobschall was not a qualified individual and that she was never denied anything because her license remained valid after her visit to the DMV on June 11, 2018.

2

Finally, even if the Court determines the amended complaint states a claim under the Rehabilitation Act and/or the ADA, the individually named defendants and the DMV should still be dismissed. The DMV is not a suable entity and must be dismissed from this case. And because the Estate has sued WisDOT directly, the official-capacity defendants are redundant to this case and should be dismissed. *Stanek v. St. Charles Community Unit School District No. 303*, 783 F.3d 634, 644 (7th Cir. 2015).

## ALLEGATIONS IN THE AMENDED COMPLAINT

### 1.    Parties.

Mary J. Wobschall is deceased, and her Estate is the plaintiff in this action.[1] Defendant Dave Ross was the Secretary of WisDOT on June 11, 2018, and he is sued in his official capacity.[2] Defendant Craig Thompson is the current Secretary-Designee of WisDOT, and he is sued in his official capacity.[3] Defendant Kristina Boardman is the Administrator of the DMV, and she is sued in her official capacity.[4] Defendant WisDOT is an agency of the State of Wisconsin.[5] Defendant DMV is a political subdivision of WisDOT.[6]

### 2.    The Amended Complaint's factual allegations.

On June 11, 2018, Mary Wobschall was a 78-year-old resident of West Bend, Wisconsin. She and her husband, Ronald Wobschall, went to the DMV in West Bend

---

[1] Amended Complaint ¶ 9, dkt. 4:4.
[2] Amended Complaint ¶ 11, dkt. 4:4-5.
[3] Amended Complaint ¶ 12, dkt. 4:5.
[4] Amended Complaint ¶ 13, dkt. 4:5.
[5] Amended Complaint ¶ 14, dkt. 4:5.
[6] Amended Complaint ¶ 15, dkt. 4:6.

3

to renew her license.[7] Mrs. Wobschall used a cane to aid and assist herself in walking and standing.[8] Mrs. Wobschall had previously undergone knee replacement surgeries in both knees.[9]

Jane Doe, not a defendant, was a WisDOT and DMV employee and licensing examiner at Station Number One inside of the West Bend DMV facility.[10] Doe instructed Mrs. Wobschall that she must walk to a chair located in an area for pedestrian use without the aid of her cane.[11] Ronald Wobschall protested and asked Doe why his wife needed to walk without the aid of her cane and how it related to the renewal of Mrs. Wobschall's license.[12] Doe allegedly refused to answer Mr. Wobschall's questions and instead said, "Have her walk without her cane."[13] Mrs. Wobschall complied with Does' request and attempted to walk from the area in front of Station Number One to a chair located in the waiting section without the assistance of her cane.[14] Mrs. Wobschall fell and injured herself.[15]

Doe gave the Wobschalls a WisDOT/DMV form entitled, "medical examination report (MV3466)." The form was partially completed by Jane Doe. Doe wrote that Mrs. Wobschall had to undergo a general medical examination "due to fall at DMV + confusion."[16] Doe instructed the Wobschalls that Mrs. Wobschall needed to complete

---

[7] Amended Complaint ¶¶ 16-17, dkt. 4:6.
[8] Amended Complaint ¶ 19, dkt. 4:6.
[9] Amended Complaint ¶ 19, dkt. 4:6-7.
[10] Amended Complaint ¶ 21, dkt. 4:7.
[11] *Id.*
[12] Amended Complaint ¶ 22, dkt. 4:7.
[13] Amended Complaint ¶ 23, dkt. 4:7.
[14] Amended Complaint ¶ 24, dkt. 4:7.
[15] Amended Complaint ¶¶ 26-27, 38-39, dkt. 4:8, 10.
[16] Amended Complaint ¶ 29, dkt. 4:8.

4

the form in order to be approved for a renewal of her driver's license.[17] Mrs. Wobschall had until her birthday on June 31, 2018 to return to the DMV and renew her license.[18]

Soon thereafter, emergency service personnel arrived at the DMV. Mrs. Wobschall declined the medical attention and instead went to the medical clinic across the street.[19] Mrs. Wobschall fractured her wrist as a result of the fall and suffered pain in other areas of her body.[20]

The Estate alleges that, upon information and belief, WisDOT and DMV have a policy, procedure, or practice in which an individual who utilizes a mobility device must demonstrate an ability to walk without the assistance of the mobility device while at the DMV facility in the presence of a license examiner in order to be issued a driver's license or renewal of a driver's license.[21] The Estate further alleges, this policy or practice is also used by defendants to determine whether an individual who uses a mobility device will be required to undergo a medical examination prior to issuance or renewal of a driver's license.[22]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." A motion to dismiss tests the sufficiency of the complaint; it does not determine the merits of the lawsuit. *See Triad Assocs., Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir.

[17] Amended Complaint ¶ 29, dkt. 4:8.
[18] Amended Complaint ¶ 31, dkt. 4:8-9.
[19] Amended Complaint ¶¶ 32-33, dkt. 4:9.
[20] Amended Complaint ¶ 38, dkt. 4:10.
[21] Amended Complaint ¶ 43, dkt. 4:11.
[22] Amended Complaint ¶ 44, dkt. 4:11.

Case 2:19-cv-01796-JPS   Filed 01/23/20   Page 5 of 27   Document 11

1989). To survive a Rule 12(b)(6) challenge, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that it "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007) (citation omitted).

Deciding a motion to dismiss, courts must accept the factual allegations as true, *see id.* at 572, in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013). A court does not accept as true "allegations in the form of legal conclusions," *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012). A complaint cannot simply contain "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Rather, it must include specific allegations that, if true, make the plaintiff's claim for relief more than speculative. *See Twombly,* 550 U.S. at 555.

## ARGUMENT

The Estate's claims under the Due Process Clause of the Fourteenth Amendment must be dismissed because WisDOT and the official-capacity defendants have Eleventh Amendment immunity from claims brought under Title 42 U.S.C. § 1983. DMV is not a suable entity and all claims against it must be dismissed. The official-capacity defendants must be dismissed because the Estate lacks standing to pursue any claim for prospective injunctive relief. The Estate's claim for injunctive relief under Title II of the ADA must be dismissed for the same reasons, and the

Estate may not pursue a claim for damages under the ADA because the amended complaint's factual allegations do not state a constitutional violation under the Fourteenth Amendment. As for the claim under the Rehabilitation Act, the allegations in the complaint fail to state a prima facie case for discrimination.

Finally, even if the Court decides that the Rehabilitation Act claim may proceed, the official capacity defendants should still be dismissed as redundant.

## I. The DMV is not a suable entity and must be dismissed.

The Estate asserts claims against the DMV, but this defendant is not a suable entity and must be dismissed. State law determines if this defendant is suable in federal court. *See* Fed. R. Civ. P. 17(b);[23] *Busby v. Electric Utils. Employees Union*, 323 U.S. 72, 73 (1944) (*per curiam*). Under Wisconsin law, "a cause of action accrues where there exists a claim capable of present enforcement, *a suable party against whom it may be enforced*, and a party who has a present right to enforce it." *Employers Ins. of Wausau v. Smith,* 154 Wis. 2d 199, 231, 453 N.W.2d 856 (1990) (emphasis added).

Courts have routinely held that divisions within a governing body have no legal existence separate from the governing body and cannot be separately sued. *See Whiting v. Marathon County Sheriff's Dept.*, 382 F.3d 700, 704 (7th Cir. 2004) ("[T]he

---

[23] Federal Rule of Civil Procedure 17 reads, in pertinent part:
    **(b) Capacity to Sue or Be Sued.** Capacity to sue or be sued is determined as follows:
        **(1)** for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
        **(2)** for a corporation, by the law under which it was organized; and
        **(3)** for all other parties, by the law of the state where the court is located.

Marathon County Sheriff's Department is not a legal entity separable from the county government which it serves and is therefore, not subject to suit.") *Derby v. University of Wisconsin*, 54 F.R.D. 599, 600 (E.D. Wis. 1972), *aff'd*, 489 F.2d 757 (7th Cir. 1973) ("the action may not be maintained against the University of Wisconsin or the University of Wisconsin-Parkside since they are not natural or corporate persons"); *Tadder v. Univ. of Wisconsin-Rock Cty.*, No. 13-CV-105-WMC, 2013 WL 3943498, at *2 (W.D. Wis. July 30, 2013) ("Defendants first contend that UW–Rock County is not competent to sue and be sued under Wisconsin law. They are correct."); *Alawiye v. University of Wisconsin-Madison*, No. 06-CV-233-S, 2006 WL 1941999, *1 (W.D. Wis. July 11, 2006) ("University of Wisconsin-Madison is not a suable entity"); Here, the Division of Motor Vehicles is a division within WisDOT and falls squarely within this general rule.

Because the Wisconsin Legislature did not confer suable status on the DMV, it is not a legal, suable entity and must be dismissed. *See Whiting,* 382 F.3d at 704.

## II. The Eleventh Amendment bars the Estate's Fourteenth Amendment claims against WisDOT and the official capacity defendants, and the *Ex Parte Young* exception does not apply.

The Estate appears to allege that the defendants violated Mrs. Wobschall's due process rights under the Fourteenth Amendment by depriving her of alleged "fundamental property and liberty interests" in her driver's license and personal property, *i.e.* her cane. The defendants presume the Estate brings these claims under Title 42 U.S.C. § 1983.[24] But the Eleventh Amendment bars the Estate's claim for

---

[24] Title 42 U.S.C. § 1983 states in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects,

damages under Section 1983 against WisDOT and the official capacity defendants. And the Estate lacks standing to pursue a claim for prospective injunctive relief because Mrs. Wobschall is deceased and was deceased at the time the lawsuit was filed. Thus, none of the exceptions to Eleventh Amendment immunity in *Ex Parte Young* apply. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908).

### A. WisDOT is not a person for purposes of claims under 42 U.S.C. § 1983.

A State agency is not a "person" under 42 U.S.C. § 1983. It is black letter law that a state, state agency, or an arm of the state is not a "person," and an entity is not subject to such a claim. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 67, 71 (1989); *Thomas v. Illinois*, 697 F.3d 612, 613-14 (7th Cir. 2012); *Gleason v. Bd. of Educ. of City of Chicago*, 792 F.2d 76, 79 (7th Cir. 1986).

Here, WisDOT is an agency of the State of Wisconsin.[25] WisDOT is not a person for purposes of 42 U.S.C. § 1983. Therefore, the Estate's Section 1983 claim against WisDOT must be dismissed.

### B. The official capacity defendants have Eleventh Amendment immunity from the Estate's claim under 42 U.S.C. § 1983.

#### 1. Overview of Eleventh Amendment immunity for official-capacity defendants under 42 U.S.C. § 1983.

---

or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

[25] Amended Complaint ¶ 14, dkt. 4:5.

State officials acting in their official capacities are likewise not "persons" for the purposes of an action under 42 U.S.C. § 1983. *Will,* 491 U.S. at 71. An official capacity suit against a state official is not a suit against the official but rather is a suit against the official's office, and "is no different from a suit against the State itself." *Id.* Thus, the Eleventh Amendment bars actions in federal court against state officials sued in their official capacities. *See Edelman v. Jordan,* 415 U.S. 651, 663 (1974); *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *Will,* 491 U.S. at 70-71; *MSA Realty Corp. v. State of Illinois*, 990 F.2d 288, 291 (7th Cir. 1993) (state officials sued in their official capacities cannot be sued for money damages).

There are three specific exceptions to Eleventh Amendment immunity to lawsuits in federal court: (1) Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so through a valid exercise of its power; (2) a state has properly waived its immunity and consented to suit in federal court; and (3) the plaintiff "seek[s] prospective equitable relief for ongoing violations of federal law … under the *Ex Parte Young* doctrine." *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002) (citing *Marie O. v. Edgar*, 131 F.3d 610, 614-15 (7th Cir. 1997) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55-56 (1996) and *Ex Parte Young*, 209 U.S. 123, 159-60 (1908))). Here, the first two exceptions do not apply because Congress has not abrogated the State's immunity from suit under section 1983,[26] and Wisconsin has not waived its immunity and consented to suit.

---

[26] *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 67, 71 (1989); *Gleason v. Bd. of Educ. of City of Chicago*, 792 F.2d 76, 79 (7th Cir. 1986).

As for the third exception, State employees may be sued in their official capacities in federal court, but *only* for prospective relief to end ongoing violations of federal constitutional law or statutory provisions. *Ex parte Young*, 209 U.S. 123, 156-57 (1908). To avoid the Eleventh Amendment bar, a plaintiff must allege that the state officer is currently acting in violation of federal law. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

The complaint must seek prospective relief to address this ongoing violation, not compensation or other retrospective relief for violations past. *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Quern v. Jordan*, 440 U.S. 332, 346-49 (1979). As the Seventh Circuit has explained, "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges [1] an ongoing violation of federal law and [2] seeks relief properly characterized as prospective.'" *Amundson ex rel. Amundson v. Wisconsin Dep't of Health Servs.*, 721 F.3d 871, 873 (7th Cir. 2013) (citing *Verizon Maryland Inc. v. Public Service Commission of Maryland,* 535 U.S. 635, 645 (2002)); *MCI Telecommunications Corp. v. Illinois Bell Telephone Co.*, 222 F.3d 323, 336-37 (7th Cir. 2000). When the plaintiff does not allege an "ongoing violation of federal law," a federal court may not issue equitable relief. *Watkins v. Blinzinger*, 789 F.2d 474, 484 (7th Cir. 1986).

"To take advantage of *Young* the plaintiffs must sue the particular public official whose acts violate federal law." *David B. v. McDonald,* 156 F.3d 780, 783 (7th Cir. 1998).

## 2. The Estate lacks standing to pursue prospective injunctive relief under 42 U.S.C. § 1983.

The third exception to Eleventh Amendment immunity does not apply to this case. The Estate lacks standing to pursue prospective injunctive relief against the official-capacity defendants because the injunction could not impact Mrs. Wobschall, who is deceased.

Whether a plaintiff has standing is grounded in Article III. *Friends of the Earth v. Laidlaw Environmental Services*, 528 U.S. 167, 178-79 (2000). "The threshold inquiry from a constitutional perspective is whether the case presents an actual case or controversy for the court to resolve." *Lehn v. Holmes*, 364 F.3d 862, 870 (7th Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). To establish Article III standing for a claim for prospective injunctive relief, a plaintiff must show:

> (1) [she] has suffered an injury-in-fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lehn*, 364 F.3d at 871 (quoting *Friends of the Earth*, 528 U.S. at 180-81).

Here, the Estate cannot meet the third requirement of this test because any injunctive and declaratory relief the Estate might seek would not affect Mrs. Wobschall in any way and would not redress her alleged injuries. *See Platcher v. Health Professionals, Ltd.,* No. 04-1442, 2006 WL 1980193, at *4 (C.D. Ill. 2006) (capable-of-repetition doctrine could not save claim for injunctive relief brought by father of deceased prisoner because plaintiff lacked standing when suit was commenced); *Bowman v. Corrections Corp. of America,* 350 F.3d 537, 550 (6th Cir.

2003) (mother of deceased prisoner could not pursue claim to enjoin prison's unconstitutional medical policy, because injunction could not impact decedent); *see, also, Valdez v. Indiana State Prison,* No. 2:11-CV-484, 2012 WL 3921445, at *3 (N.D. Ind. Sept. 7, 2012); *Moulton v. Indiana*, No. 209-CV-118-PPS, 2010 WL 2008986, at *3 (N.D. Ind. May 19, 2010).

Because the Estate lacks Article III standing to bring a claim for prospective injunctive relief, the Estate's Fourteenth Amendment claims against Ross, Thompson, and Boardman must be dismissed.

### III. The Estate fails to state a claim under the Due Process Clause of the Fourteenth Amendment even if the individual defendants were named in their personal capacities.

Even if the Estate claims to have brought the Fourteenth Amendment claims against the individual defendants in their personal capacities, the amended complaint fails to state a Fourteenth Amendment procedural due process claim because Mrs. Wobschall didn't suffer any deprivation, she was never denied process, and the amended complaint fails to establish any direct, personal involvement of Ross, Thompson, and Boardman in any alleged constitutional deprivation.

### A. The amended complaint fails to state a claim under the Due Process Clause of the Fourteenth Amendment.

To demonstrate a procedural due process violation, a plaintiff must establish all of the following elements: (1) a cognizable liberty or property interest under the Fourteenth Amendment; (2) a deprivation of that liberty or property interest; and (3) a denial of due process. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). To determine whether the Due Process Clause has been violated, the Court first

Case 2:19-cv-01796-JPS   Filed 01/23/20   Page 13 of 27   Document 11

examines whether the plaintiff has been deprived of a liberty or property interest. *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Here, Mrs. Wobschall was never denied a liberty or property interest.

There is no indication that Mrs. Wobschall's license was suspended or revoked. *Cf. Mackey v. Montrym,* 443 U.S. 1, 10 & n. 7 (1979) (the Due Process Clause applies to a state's suspension or revocation of a driver's license). The allegations in the amended complaint do not support any deprivation of Mrs. Wobschall's alleged property interest in her driver's license. Under Wis. Stat. § 343.16(5)(a), any applicant for a license may be required to submit to a special examination to determine incompetency, physical or mental disability, or any other condition that might prevent such applicant or licensed person from exercising reasonable and ordinary control over a motor vehicle. Here, Mrs. Wobschall wanted renewal of her driver's license.[27] Mrs. Wobschall presented to the examiner using a cane, showing confusion, and her husband was apparently doing all the talking. The examiner asked Mrs. Wobschall to demonstrate that she had appropriate strength and control of her lower extremities by walking a few steps without her cane, which Mrs. Wobschall agreed to do.[28] Unfortunately, Mrs. Wobschall was unable to walk more than a few steps before falling, so the examiner gave Mrs. Wobschall the general medical examination form with instruction to have Mrs. Wobschall's medical provider to clear her as safe to drive on Wisconsin roads.[29] There is no allegation that the examiner

---

[27] Amended Complaint ¶¶ 16-17, dkt. 4:6.
[28] Amended Complaint ¶ 24, dkt. 4:7.
[29] Amended Complaint ¶ 29, dkt. 4:8.

took away Mrs. Wobschall's valid driver's license, or otherwise suspended or revoked her driving privilege at that time. Mrs. Wobschall voluntarily complied with the request to walk a few steps without her cane. She did not suffer any deprivation under the Fourteenth Amendment. The Court should dismiss the Estate's Fourteenth Amendment due process claim for this reason.

### B. The amended complaint fails to state a claim against Ross, Thompson, and Boardman for violation of Mrs. Wobschall's procedural due process rights.

Even if the Court determines the Estate sufficiently alleged facts to support a constitutional deprivation under the Due Process Clause, Title 42 U.S.C. § 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a section 1983 action unless he or she caused or participated in an unconstitutional deprivation of rights. *Zentmeyer v. Kendall Cnty.*, 220 F.3d 805, 811 (7th Cir. 2000). Allegations against one individual cannot be considered against other defendants. A complaint must state facts that, if true, demonstrate each named defendant participated in a constitutional violation. An individual cannot be held liable under Section 1983 unless he or she personally caused or participated in the alleged violation. *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012); *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir. 2002); *Iqbal*, 556 U.S. at 679.

Here, the Estate named three high-level officials of WisDOT. These individuals cannot be found liable for damages on the basis of respondeat superior or other forms of vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 675-77 (2009); *T.E. v. Grindle*,

599 F.3d 583, 588 (7th Cir. 2010). Further, any "contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, [the well-established Supreme Court] rule that public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

The Estate's allegations fail to establish any direct personal involvement in the alleged due process violation. Ross, Thompson, and Boardman did not ask Mrs. Wobschall to demonstrate she could walk independently. Nor did they allegedly deprive her of her cane or her driver's license. Indeed, nobody did. Mrs. Wobschall voluntarily complied with the DMV examiner's request to walk independently. And there is no allegation that the examiner suspended or revoked Mrs. Wobschall's driving privilege after she was unable to show she could walk independent of her cane.

Because the amended complaint fails to state a viable Fourteenth Amendment due process claim against the individual defendants, the Estate's Fourteenth Amendment claim should be dismissed.

## IV. The amended complaint fails to state a substantive due process claim under the Fourteenth Amendment.

To the extent the Estate is raising a substantive due process claim, this claim fails against the named defendants for lack of personal involvement and for failure allege facts to support a substantive due process deprivation.

While the Fourteenth Amendment generally prohibits the deprivation, without due process of law, of a person's "life, liberty, or property," *Smith v. Bd. of Educ. of*

16

*Urbana Sch. Dist. No. 116 of Champaign Cty.,* 708 F.2d 258, 261 (7th Cir. 1983), "[t]he substantive due process doctrine is rooted in the notion that some rights and liberty interests are so fundamental that no amount of process would justify government interference." *Olejnik v. England*, 147 F. Supp. 3d 763, 776 (W.D. Wis. 2015) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)). "A right is sufficiently fundamental to warrant substantive due process protection when it is very deeply rooted in our history and legal traditions, and it 'is implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Id.* (citations omitted).

The Supreme Court has held that substantive due process protects the freedoms specifically enumerated in the Bill of Rights in addition to certain non-enumerated rights, including the rights to marry, to have children, to direct the education and upbringing of one's children, and to enjoy marital privacy, use contraception, have bodily integrity, and to have an abortion. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citing cases). The Supreme Court has been reluctant to enlarge the list of rights protected by substantive due process "because guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *Id.*

Substantive due process "also protects non-fundamental liberty interests from arbitrary, unjustified government action." *Olejnik*, 147 F. Supp. 3d at 776 (citing *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007), *as amended* (Nov. 19, 2007)). Government officials violate substantive due process if their actions are "so arbitrary

and irrational that, when the court considers all circumstances, it 'shocks the conscience.'" *Olejnik,* 147 F. Supp. 3d at 777 (quoting *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003)). The Supreme Court has described the threshold question as "whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849.

Both the Supreme Court and the Seventh Circuit have "emphasized how limited the scope of the substantive due process doctrine is." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) (citations omitted); *see, also, Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008)

The Estate's substantive due process claim does not allege deprivation of a fundamental right protected under the Fourteenth Amendment regardless of pre- or post-deprivation process, and it falls far short of the required conduct that is so egregious, so outrageous, and unjustifiable by any government interest that it may be said to shock the conscience. As argued above in section III, the examiner had authority to request Mrs. Wobschall to submit to a special examination to determine incompetency, physical or mental disability, or any other condition that might prevent her from exercising reasonable and ordinary control over a motor vehicle. Wis. Stat. § 343.16(5)(a). Mrs. Wobschall voluntarily complied with the request that

she walk a few steps without her cane. She was not deprived of her cane against her will, nor was she deprived her driving privileges. Thus, to the extent the Estate intended to raise a substantive due process claim, the amended complaint fails to allege facts to support such a claim and also fails to establish the named defendants had any direct, personal involvement in any deprivation.

V.   **The Estate's claim under Title II of the ADA must be dismissed because there is no remedy available for any purported violation.**

The Estate's claim under Title II of the ADA must be dismissed because there is no remedy available for any purported violation. The defendants have Eleventh Amendment immunity from any claim for damages under the ADA, and the Estate lacks standing to pursue any claim for injunctive or declaratory relief.

A.   **The Eleventh Amendment bars the Estate's claim for damages against the defendants under Title II of the ADA because there is no Fourteenth Amendment deprivation.**

The Enforcement Clause (§ 5) of the Fourteenth Amendment empowered Congress to abrogate the states' Eleventh Amendment immunity via Title II of the ADA insofar as a violation of the statute implicates "the fundamental right of access to the courts," e.g., wheelchair ramps at courthouses. *Tennessee v. Lane*, 541 U.S. 509, 530–34 (2004). More generally, § 5 gave Congress the ability to abrogate Eleventh Amendment immunity via the ADA insofar as necessary to protect the rights guaranteed by the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 158–59 (2006). Accordingly, an ADA claim can be brought against a state if the

19

underlying conduct complained of violates not only the ADA but also actually violates the Fourteenth Amendment. *Id.*

The Seventh Circuit held prior to those cases, however, that the ADA does not validly abrogate the states' Eleventh Amendment immunity at all. *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 737–41 (7th Cir. 2000), *cert. denied*, 531 U.S. 1190 (2001). That remains the law in this Circuit except to the extent it is inconsistent with *Georgia* or *Lane*. In those cases, the Supreme Court ruled only that the ADA validly abrogates Eleventh Amendment immunity as to actual violations of the Fourteenth Amendment, leaving open whether a further "prophylactic" reach is permitted. *Georgia*, 546 U.S. at 158 (citing *Lane*, 541 U.S. at 513). But *Stevens* has never been overruled, so in this Circuit, states may not be sued under the ADA except insofar as *Georgia* and *Lane* determined they can be. Accordingly, because the allegations in this case do not make out any actual Fourteenth Amendment violation, the defendants are immune from damages for the ADA claim under the Eleventh Amendment. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 n.5 (7th Cir. 2012) ("dispens[ing] with the [inmate's] ADA [claim] and the thorny question of sovereign immunity" because the plaintiff had a coextensive Rehabilitation Act claim).

## B. The Estate lacks standing to pursue injunctive and declaratory relief under Title II of the ADA.

"Standing is evaluated at the time [the] suit is filed." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 928 (7th Cir. 2013). At the time of filing the complaint and the amended complaint, the Estate lacked standing to pursue injunctive and declaratory relief under Title II of the ADA

for the same reasons argued in section II.b.2 above. The Estate cannot establish any "real and immediate" threat of future discrimination to Mrs. Wobschall. *See Reed v. State of Illinois*, No. 12-CV-7274, 2016 WL 2622312, at *7–8 (N.D. Ill. May 9, 2016); *Shotz v. Cates*, 256 F.3d 1077, 1082 (11th Cir. 2001) (dismissing ADA Title II complaint where "the plaintiffs do not allege a real and immediate threat of future discrimination."); *Sidiakina v. Bertoli*, 612 Fed. Appx. 477, 478 (9th Cir. 2015) (holding that a Title II litigant's argument that she "may reengage" with the state court system in connection with her divorce proceedings was "too remote and speculative to confer standing"); *Hoepfl v. Barlow*, 906 F. Supp 317, 321 (E.D. Va 1995). Because the Estate lacks standing to pursue a claim for prospective injunctive and declaratory relief, and because the amended complaint fails to state a constitutional violation, the Court should dismiss the ADA claim in its entirety.

## VI. The Estate fails to state a claim under the Rehabilitation Act.

To state a claim under the Rehabilitation Act, the Estate must allege that Mrs. Wobbschall was (1) a qualified person; (2) with a disability; and (3) she was denied access to a program or activity because of her disability. *Jaros,* 684 F.3d at 672 (citing 29 U.S.C. § 705(2)(B)). The defendants concede that the Estate has met its pleading obligations for establishing Mrs. Wobschall was a person with a disability by alleging the defendants "regarded Mrs. Wobschall as having an actual or perceived physical impairment because she used a cane to aide herself in walking and standing."[30] However, the Estate has failed to allege facts that, if true, demonstrate Mrs.

---

[30] Amended Complaint ¶ 89, dkt. 4:19.

Wobschall was a "qualified individual with a disability" capable of safely operating a motor vehicle or that Mrs. Wobschall was "denied access to a program because of [her] disability." *See Jaros*, 684 F.3d at 672 (citing 29 U.S.C. § 705(2)(B)).

### A. The Estate cannot establish that Mrs. Wobschall was a qualified individual with a disability.

The Estate has not alleged sufficient factual allegations to establish that Mrs. Wobschall was a qualified individual with a disability. The benefit Mrs. Wobschall sought to obtain from the defendants in renewing her license was to operate a motor vehicle.[31] In Wisconsin, the operation of a motor vehicle is a privilege properly regulated by the state. *Steeno v. State*, 85 Wis.2d 663, 671 (1978).

Because Title II of the ADA "adopts the "remedies, procedures, and rights" set forth in the Rehabilitation Act, courts have held there is overlap between the two laws and it can be helpful to review caselaw from ADA when interpreting claims for which no directly applicable Rehabilitation Act caselaw is available. *See Clarkson v. Iowa Department of Transportation*, No. C03-2038-LRR, 2005 WL 1417112 at 8 (N.D. Iowa 2005); *Petersen v. University of Wisconsin Bd. of Regents*, 818 F. Supp. 176, 1278 (W.D. Wis. 1993) (citing 42 U.S.C. §§ 12133). Title II of the ADA is modeled after Section 504 of the Rehabilitation Act. *See Washington v. Indiana High School Athletic Ass'n.,* 181 F.3d 840, 845 (7th Cir.1999) (citing *Grzan v. Charter Hosp. of Northwest Indiana,* 104 F.3d 116, 123 (7th Cir.1997). The elements of claims under the two provisions are essentially identical and precedent under one statute typically applies to the other. *See id.* Under the ADA, courts have held that an individual is a

---

[31] Amended Complaint ¶¶ 17, 24 dkt. 4:6-7

"qualified individual" for purposes of receiving a driver's license if she meets the "essential eligibility requirements." *See Clarkson*, 2005 WL 1417112 at 8 (citing *Theirault v. Flynn*, 162 F.3d 46, 48 (1st Cir. 1998) (citing 42 U.S.C. § 12131(2)). Under the ADA, a public entity is also not required "to permit an individual to participate in or benefit from the services, programs, or activities of that public entity when that individual poses a direct threat to the health or safety of others" 28 C.F.R. § 35139(a).

Mrs. Wobschall came to the DMV on June 11, 2018, using a cane to aid and assist her in walking and standing.[32] When the licensing examiner requested that Mrs. Wobschall demonstrate that she had adequate strength in her legs to safely utilize the regular foot pedals for braking, etc., she unfortunately fell after a few steps.[33] As a result of being unable to demonstrate her strength and stability to safely operate a motor vehicle, the licensing examiner then provided Mrs. Wobschall with a medical examination report to be completed by her doctor "due to fall at DMV + confusion."[34] Because Mrs. Wobschall was not able to demonstrate that she could safely operate a motor vehicle, the defendants required additional information from a medical provider. Thus, her status as a "qualified individual with a disability" was yet to be determined based on whether she could meet the "essential eligibility requirements" of obtaining her driver's license. *See Theirault*, 162 F.3d at 48. Thus, the Estate cannot satisfy this element of its *prima facie* case.

---

[32] Amended Complaint ¶ 17, 19, dkt. 4:6.
[33] Amended Complaint ¶¶ 21-26, dkt. 4:7-8.
[34] Amended Complaint ¶ 29, dkt. 4:7-8.

**B. The Estate cannot establish that Mrs. Wobschall was a denied access to a program or activity because of her disability.**

Even if the Estate's allegations were sufficient to show that Mrs. Wobschall was a qualified individual with a disability, it still cannot satisfy its *prima facie* case of disability discrimination under the Rehabilitation Act because it has failed to allege facts that, if true, demonstrate that Mrs. Wobschall was "denied access to a program or activity because of [her] disability." In *Clarkson v. Iowa Department of Transportation*, the court found that a plaintiff could not show he was denied access to a program or activity under the Rehabilitation Act even though he was required to provide a medical report prior to obtaining his driver's license and was then issued a two-year, rather than five-year, driver's license. *See Clarkson v. Iowa Department of Transportation*, No. C03-2038-LRR, 2005 WL 1417112 (N.D. Iowa 2005). In *Clarkson*, the plaintiff, Clarkson, sued the Iowa Department of Transportation (IDOT) alleging discrimination under the Rehabilitation Act. *Id*. Clarkson had been diagnosed with Multiple Sclerosis (MS) and, upon revealing his diagnosis to IDOT, he was not permitted to obtain a driver's license on that day and was instead told he would need to submit a medical report to obtain his license. *Id* at 2-3. When Clarkson returned to IDOT with a completed medical form, he was issued a two-year driver's license with a "W" restriction instead of the more typical five-year unrestricted driver's license. *Id*. The "W" restriction on Clarkson's driver's license required him to submit another medical report when he renewed his license in two years. *Id*. at 3. Clarkson sued IDOT, alleging discrimination based on his disability under the Rehabilitation Act. *Id*.

Based on a change in IDOT's policies and the plaintiff's successful completion of his driving test and other conditions required to renew his license, the plaintiff in *Clarkson* was permitted to obtain a five-year unrestricted license when it came time to renew his driver's license. *Id.* at 3-4. The court in *Clarkson* found that the plaintiff failed to satisfy his prima facie case under the Rehabilitation Act because he could not show "that he was denied the benefits of a program or activity of the IDOT." The court reasoned that although it was undisputed the plaintiff received a two-year driver's license with a "W" restriction, "IDOT granted to Clarkson an unrestricted five-year driver's license before Clarkson ever felt the effect of having been issued the two-year "W" restriction driver's license." *Id.* at 6.

Similar to the plaintiff in *Clarkson*, Mrs. Wobschall did not suffer a deprivation of the benefit of a program or activity and the Estate's allegations fail to state a *prima facie* claim of discrimination under the Rehabilitation Act. The amended complaint has no allegation that Mrs. Wobschall's driving privileges were interrupted as a result of the defendants' conduct. As alleged by the Estate, Mrs. Wobschall went with her husband on or about June 11, 2018 to the DMV "for the purpose of renewing her driver's license."[35] "Jane Doe instructed Mr. And Mrs. Wobschall that Mrs. Wobschall needed to complete [a medical examination report (MV3466)] in order for Mrs. Wobschall to be approved for a renewal of her driver's license" and that "Mrs. Wobschall had until her birthday on June 31, 2018 to return…and renew her license, leaving Mrs. Wobschall "approximately 20 days before her valid driving privileges

---

[35] Amended Complaint ¶ 17, dkt. 4:6.

would be revoked, suspended cancelled disqualified, and/or denied."[36]  Thus, while plaintiff pleads hypothetical harms, it does not allege that defendants actions actually deprived Mrs. Wobschall of her driving privileges by revoking, suspending, or otherwise denying her driving privileges. Instead, based on the observations of the DMV employees, Mrs. Wobschall was merely asked for additional information, which, by the Estate's own admission, she had approximately 20 more days to provide in order to obtain the renewal of her driver's license. Because the Estate cannot show that the defendants denied Mrs. Wobschall access to her driving privileges because of her disability, her claim for discrimination under the Rehabilitation Act must be dismissed.

## VII.    The official capacity defendants should be dismissed.

For the remaining claim under the Rehabilitation Act, the only appropriate defendant for a claim under the Rehabilitation Act is the agency responsible for the regulation in question. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (citing 29 U.S.C. § 794(b); 42 U.S.C. § 12131; *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004)). And even if the Court allows the Estate to proceed with an ADA claim, the individually named defendants should be dismissed under the Seventh Circuit's decision in *Stanek v. St. Charles Community Unit School District No. 303*, 783 F.3d 634 (7th Cir. 2015). In *Stanek*, the Seventh Circuit affirmed the district court's dismissal of official capacity individual defendants in a Title II lawsuit where the plaintiffs also sued the public entity directly. *Id.* at 644. Here WisDOT is

---

[36] Amended Complaint ¶¶ 29, 31, 35, dkt. 4:8-9.

a defendant. The official capacity defendants are therefore redundant, and the Court should dismiss them.

## CONCLUSION

The defendants request the Court to grant their motion to dismiss and dismiss the Estate's claims.

Dated this 23rd day of January, 2020.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/Rachel L. Bachhuber
RACHEL L. BACHHUBER
Assistant Attorney General
State Bar #1052533

JEFFERY A. SIMCOX
Assistant Attorney General
State Bar #1116949

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0188 (Bachhuber)
(608) 266-3861 (Simcox)
(608) 267-8906 (Fax)
bachhuberrl@doj.state.wi.us
simcoxja@doj.state.wi.us