# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ESTATE OF MARY J. WOBSCHALL,
by Special Administrator RONALD I.
WOBSCHALL,

                    Plaintiff,

v.

DAVE ROSS, CRAIG THOMPSON,
KRISTINA BOARDMAN, STATE OF
WISCONSIN DEPARTMENT OF
TRANSPORTATION, and STATE OF
WISCONSIN DIVISION OF MOTOR
VEHICLES,

                    Defendants.

Case No. 19-CV-1796-JPS

**ORDER**

On January 9, 2019, Plaintiff, the Estate of Mary Wobschall, filed an amended complaint seeking declaratory relief and damages arising from an incident at the West Bend, Wisconsin Department of Motor Vehicles ("DMV") in which Mary Wobschall ("Wobschall") was forced to walk without the assistance of her mobility device in order to renew her driver's license. (Docket #4). As a result, Wobschall fell and sustained injuries, one of which required surgery. On January 23, 2020, Defendants filed a motion to dismiss for failure to state a claim, (Docket #10), as well as a motion to stay discovery pending resolution of the motion to dismiss, (Docket #12). The motion to dismiss was fully briefed on February 27, 2020. Then, Plaintiff filed a motion to amend the complaint. (Docket #20). That motion, too, is fully briefed. For the reasons explained below, the motion to amend will be granted to the extent provided herein, the motion to dismiss will be

granted in part and denied in part, and the motion to stay will be denied. Additionally, the parties' joint motion to amend the trial scheduling order (Docket #33) will be denied, and all dates embodied in the trial scheduling order (Docket #15) will be vacated pending resolution of the COVID-19 pandemic.

## 1.    Legal Standard

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Courts favor granting leave to amend, but they act within their discretion to deny such leave when there is a substantial reason to do so. *Select Creations, Inc. v. Paliafito Am., Inc.*, 830 F. Supp. 1213, 1216 (E.D. Wis. 1993). Such reasons include undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002).

An amendment is futile when "the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004). In this way, the "standard is the same standard of legal sufficiency that applies under Rule 12(b)(6)." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In their briefs on the motion to amend, the parties each make significant reference to their earlier briefs on the motion to dismiss, often relying on arguments that were made at the motion to dismiss stage. In light of the posture of this case—wherein a motion to dismiss has been fully briefed, and a related motion to amend has also been fully briefed—the Court will evaluate the motion to amend with reference to the motion to dismiss briefing. This aligns with how the parties have drafted their own briefing on the motion to amend, and will assist in determining whether the proffered second amended complaint is futile.

## 2. Relevant Facts

### 2.1 Factual Background

The second amended complaint brings suit against David Ross ("Ross"), in his official capacity as Secretary of the Wisconsin Department of Transportation; Craig Thompson ("Thompson"), in his official capacity as Secretary-Designee of the Wisconsin Department of Transportation; Kristina Boardman ("Boardman"), in her official capacity as Administrator of the Wisconsin Division of Motor Vehicles; and Debbie Hurst ("Hurst") in both her individual and official capacities; as well as the State of Wisconsin Department of Transportation ("WisDOT") and the DMV.

On June 11, 2018, Wobschall, a 78-year-old woman, and her husband, Ronald, went to the West Bend DMV to renew Wobschall's driver's license. At the time of renewal, Wobschall had been driving for sixty years and had a spotless driving record. Wobschall prepared for the license renewal process by undergoing an eye examination, which

confirmed that Wobschall's eyesight was fit for driving and that she did not require any restrictions—not even corrective lenses.

A few years earlier, Wobschall had had both of her knees replaced. The surgery left her with some residual pain, and she used a cane to help her stand and walk. Thus, when she arrived at the DMV to renew her license, she used a cane to move around.

At some point during the appointment, Hurst, a DMV employee who was involved with Wobschall's license renewal application, told Wobschall that she needed to prove that she could walk from the examiner's station to a chair in the waiting area without the use of her cane in order to renew. Wobschall protested, and inquired how her ability to walk a certain distance was relevant to her license renewal. Hurst did not answer Wobschall's questions, but doubled down on the request. She took Wobschall's cane and instructed, "Have her walk without her cane."

Wobschall attempted to comply, and began to walk, unassisted, towards the chair that Hurst had arbitrarily designated as the end point. But without the assistance of her cane, Wobschall fell. When Wobschall fell, no DMV employee did anything to help her up. Ronald went to his wife's aid, and helped her into a nearby chair. Wobschall was shaken and humiliated.

As a result of this incident, Hurst denied Wobschall's license renewal request and gave her an MV3466 form, which instructed Wobschall to undergo a "general medical" examination "due to a fall at DMV + confusion" before she could renew her license. Hurst omitted her own name and badge number from the MV3466 form, and denied Wobschall a temporary license, as well. Hurst told Wobschall that she had until June 31, 2018 (Wobschall's birthday) to renew her license. This left Wobschall with

only 20 days to get a medical examination before her driving privileges would be suspended. Because of her fall, Wobschall suffered several injuries and had to have surgery on her fractured left wrist. The surgery and recovery period prevented Wobschall from timely renewing her license.

### 2.2 Wisconsin Law

Under Wis. Stat. § 343.16(3), which sets forth the criteria for examining license renewal applicants, the DMV must administer an eye examination once every eight years for a driver's license renewal, unless the person seeking renewal has medical documentation showing that she recently passed an eye examination. Wis. Stat. § 343.16(3). The provision does not allow DMV staff to perform any other kind of physical examination on a person seeking to renew her license. Thus, when Wobschall arrived at the DMV with her eye examination documents, she had fulfilled the basic statutory criteria to renew her license.

In some instances, if "the secretary has good cause to believe that a licensed operator is incompetent or otherwise not qualified to be licensed, the secretary may, upon written notice of at least 5 days to the licensee, require the licensee to submit to an examination" as required for first-time applicants; i.e., "a knowledge test and an actual demonstration in the form of a driving skills test." *Id.* § 343.16(6)(a), (1)(a). If the department "requires an examination for renewal of an operator's license," they must issue a receipt requesting such an examination, which constitutes a 60-day temporary license. *Id.* § 343.16(6)(b).

Relatedly, the secretary may ask "any licensed operator to submit to a special examination *by such persons or agencies as the secretary may direct to determine incompetency*, physical or mental disability, disease, or any other

condition that might prevent such . . . licensed person from exercising reasonable and ordinary control over a motor vehicle." *Id.* § 343.16(5)(a) (emphasis added). In other words, the statute authorizes the DMV to tell the person seeking renewal whom she should receive a medical examination from, but the statute does not authorize the DMV to actually conduct the examination. Additionally, if the DMV receives the examination results and determines that the license should not be renewed, it must provide "[n]otice of denial or cancellation. . .in writing and contain specific reasons," along with instructions of how to seek review of the decision. *Id.*

**3.      Analysis**

      **3.1      WisDOT and DMV as Proper Defendants**

As a preliminary matter, it appears that the DMV and WisDOT are duplicative defendants, since the DMV is part of WisDOT. *See* State of Wisconsin – Department of Transportation, *Division of Motor Vehicles (DMV)*, https://wisconsindot.gov/Pages/online-srvcs/external/dmv.aspx (last accessed August 31, 2020). Plaintiff has drawn the Court's attention to several cases in which a plaintiff sued a state's DMV. *Duprey v. State of Conn., Dep't of Motor Vehicles*, 28 F. Supp. 2d 702 (D. Conn. 1998) (suing "State of Connecticut, Department of Motor Vehicles"); *Brown v. N. Carolina Div. of Motor Vehicles*, 166 F.3d 698 (4th Cir. 1999) (suing the state Division of Motor Vehicles); *Aurelio v. Rhode Island Dep't of Admin., Div. of Motor Vehicles*, 985 F. Supp. 48 (D.R.I. 1997) (suing the Rhode Island Department of Administration, Division of Motor Vehicles, and Thomas Harrington, the Administrator for the Department of Motor Vehicles, in his official capacity for injunctive relief). To be sure, as the discussion below demonstrates, Plaintiff would be well within its right to sue either WisDOT or the DMV.

Case 2:19-cv-01796-JPS   Filed 09/22/20   Page 6 of 27   Document 34

However, none of the cases that Plaintiff cites bring suit against both the DMV *and* its overarching agency. Moreover, Plaintiff has not explained the utility in suing both WisDOT and its subdivision, and the Court does not independently discern a basis for such a suit. Therefore, the DMV will be dismissed, and Plaintiff will be permitted to bring claims against WisDOT, which oversees the DMV.

### 3.2 Claims I and II – Americans with Disabilities Act and Rehabilitation Act

Plaintiff brings two claims against WisDOT, as well as Ross, Thompson, and Boardman in their official capacities, for violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. These defendants have countered that they are immune from suit due to the Eleventh Amendment. For the reasons explained below, Plaintiff has successfully articulated a claim against either WisDOT or the official capacity defendants for violations of the ADA and Rehabilitation Act. Again, however, the Court notes that it is redundant to sue WisDOT *and* Ross, Boardman, and Thompson in their official capacities for the statutory violations. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Therefore, the Court will dismiss Ross, Thompson, and Boardman as defendants.

The Court now turns to WisDOT's contention that the Eleventh Amendment precludes the claims of violations of the ADA and Rehabilitation Act. The Eleventh Amendment, which generally protects states from suit from private citizens, provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or

equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. However, there are three exceptions to the Eleventh Amendment's sovereign immunity rule: "(1) where Congress, acting under its constitutional authority. . .abrogates a state's immunity from suit; (2) where the state itself consents to being sued in federal court; and (3) under the doctrine articulated by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908)." *Council 31 of the Am. Fed. of State, Cty., & Mun. Emp., AFL-CIO v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012) (internal citation shortened).

The first exception is relevant here, where Plaintiff alleges that the state is liable for compensatory damages due to violations of federal statutes.[1] The ADA clearly abrogates a state's immunity from suit in Section 12202: "A State shall not be immune under the [E]leventh [A]mendment to

---

[1] Declaratory relief is not appropriate for these private ADA and Rehabilitation Act claims. While courts have discretion to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," there must be an "actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937). Relatedly, "if the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues, it is usually resolved rather than dismissed." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994) (internal citations and quotations omitted). In this case, the contested action has already occurred, leaving no unsettled rights or legal obligations that cast uncertainty on the parties' future dealings with one another. *Field v. Hous. Auth. of Cook Cty.*, No. 17-cv-2044, 2018 WL 3831513, at *10 (E.D. Ill. Aug. 13, 2018) (declining to grant declaratory relief for violations of the ADA and Rehabilitation Act because granting the relief "would not prevent accrual of any avoidable damages" or "clarify the legal relations" of the parties) (citing *Rothman v. City of Chi.*, No. 02-c-3533, 2003 WL 21148180, at *5 (N.D. Ill. May 16, 2003); *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167–68 (7th Cir. 1969)).

Case 2:19-cv-01796-JPS   Filed 09/22/20   Page 8 of 27   Document 34

the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. Title II of the ADA specifically prohibits "any" public entity from discriminating against a citizen. 42 U.S.C. § 12132. However, whether Congress acted within its constitutional powers, such that the abrogation of state immunity is valid, is a more nuanced question. *See e.g.*, *Stevens v. Ill. Dep't of Trans.*, 210 F.3d 732, 741 (7th Cir. 2000) (finding that Title I of the ADA was not a valid exercise of constitutional power for the purpose of abrogating sovereign immunity).

Section Five of the Fourteenth Amendment grants Congress the "power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV § 5. Thus, Congress has the power "to remedy and to deter violation of rights guaranteed [by the Constitution] by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Bd. of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365 (2001) (citations and quotations omitted). However, "Title II [of the ADA] validly abrogates state sovereign immunity" only "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 159 (2006). In *Tennessee v. Lane*, for example, the Supreme Court concluded that a private right of action under Title II of the ADA, as it pertained to "the class of cases implicating the fundamental right of access to the courts," was a valid exercise of Congress's authority where the plaintiffs alleged that their Fourteenth Amendment Due Process Rights were actually violated. 541 U.S. 509, 533–34 (2004). In this case, then, the Court is tasked with determining not only whether Plaintiff alleged violations of the ADA and Rehabilitation Act, but also whether these

allegations give rise to a violation of a right conferred under the Fourteenth Amendment's Due Process Clause, such that a private right of action seeking damages may proceed against the state. *Id.* at 523; *see also Georgia*, 546 U.S. at 159.

### 3.2.1    ADA and Rehabilitation Act Claims

To state a claim for violations of the ADA, a plaintiff must allege that she is "a qualified individual with a disability, that [she] was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such entity, and that the denial or discrimination was by reason of [her] disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citations and quotations omitted). A qualified individual is one who "with or without reasonable modifications to rules, . . .meets the essential eligibility requirements for the. . .participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The complaint alleges that Wobschall went to the DMV before her license expired in order to timely renew it. In preparation for her renewal, she underwent—and passed—an eye examination, and came to the DMV appointment prepared with the appropriate documentation. The complaint alleges that Wobschall had good vision and a spotless driving record, thereby indicating that she was not otherwise disqualified from renewing her license. Thus, the Court finds that Wobschall was a qualified individual under the ADA. *See Wilson v. Thomas*, 43 F. Supp. 3d 628, 633 (E.D.N.C. 2014) (finding that individuals who already had valid driver's licenses that were subject to allegedly arbitrary restrictions were "qualified individuals"); *Clarkson v. Iowa Dep't of Transp.*, No. C03-2038, 2005 WL 1417112, at *8 (N.D. Iowa June 16, 2005) (noting that individuals who meet the "essential eligibility requirements" for a driver's license are "qualified individuals.").

The complaint also adequately alleges, and Defendants do not dispute, that Wobschall had a disability. The final inquiry, then, is whether the complaint adequately alleges that the state denied Wobschall access to a program or activity because of her disability. "The term 'program or activity' means *all of the operations of* . . . a department, agency, special purpose district, or other instrumentality of a State or local government." *Wilson*, 43 F. Supp. 3d at 634 (citation and quotation omitted) (assuming that arbitrary restrictions on driver's license qualified as the denial of a program or activity under the ADA and Rehabilitation Act). Here, Plaintiff alleges that Wobschall was denied the service of a license renewal because of her disability. The Court concludes that this is sufficient to state a claim under the ADA.

Relatedly, to state a claim under the Rehabilitation Act, Plaintiff must allege that "(1) [Wobschall was] a qualified person (2) with a disability and (3) the [state agency] denied [her] access to a program or activity because of [her] disability." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)). The ADA Title II claim and the Rehabilitation Act claim are "functionally identical." *Wagoner*, 778 F.3d at 592. The only relevant difference is that the Rehabilitation Act requires "the relevant state agency . . .[to] accept federal funds." *Id.* Plaintiff has alleged that WisDOT receives federal funds. (Docket #20-1 ¶ 98). The allegations supporting the ADA claim similarly support the Rehabilitation Act claim. Therefore, Plaintiff has adequately alleged a violation of the Rehabilitation Act.

### 3.2.2   Fourteenth Amendment Violation

The Court now turns to whether these allegations also give rise to a violation of the Fourteenth Amendment. *Georgia*, 546 U.S. at 159. Plaintiff alleges that, in violating the ADA and Rehabilitation Act, WisDOT also

violated Wobschall's procedural due process rights and her substantive due process rights. Each right will be examined in turn, below. For the reasons discussed in greater detail, below, the Court finds that the allegations in the second amended complaint indicate both procedural and substantive due process violations. Therefore, Plaintiff will be permitted to proceed against WisDOT on the claims for compensatory damages due to violations of Title II of the ADA and the Rehabilitation Act.

### 3.2.2.1    Procedural Due Process

Plaintiff's alleged procedural due process violation arises under the Fourteenth Amendment, which prohibits state officials from depriving individuals of life, liberty, or property without due process of law. *Colon v. Schneider*, 899 F.2d 660, 666 (7th Cir. 1990). Such a claim requires Plaintiff to establish "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) the failure to employ constitutionally adequate procedures." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 627 (7th Cir. 2016). Constitutionally protected liberty and property interests "are normally not created by the Constitution. Rather, they are created and their dimensions defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 572–73 (1975) (citations and quotations omitted). Further, when examining these sources for qualifying interests, the Supreme Court has instructed that "a person clearly must have more than an abstract need or desire for [a benefit]. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "A 'legitimate claim of entitlement' is one that is legally enforceable—one based on statutes or regulations containing 'explicitly mandatory language'

that links 'specified substantive predicates' to prescribed outcomes." *Miller v. Crystal Lake Park Dist.*, 47 F.3d 865, 867 (7th Cir. 1995) (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)).

A person has a property interest in her driver's license, which, once issued, may not "be taken away without that procedural due process required by the Fourteenth Amendment." *Bell v. Burson*, 402 U.S. 535, 539 (1971); *Dixon v. Love*, 431 U.S. 105, 112 (1977). Whether a person has a property interest in *renewing* her license is a closer question, but the Court concludes that she does. In *Easter House v. Felder*, which required the Seventh Circuit to determine whether an adoption agency had an entitlement to renew its adoption license, the Seventh Circuit determined that the "statutory and regulatory limitations upon the [state's] authority to deny license renewals. . .created such a legitimate claim of entitlement" so as to give rise to procedural due process protections. 910 F.2d 1387, 1395 (7th Cir. 1990). Similarly, in *Reed v. Vill. of Shorewood*, the Seventh Circuit determined that "undemanding" "criteria for renewal . . . suggest[ed] that the . . . legislature expected most licenses to be renewed as a matter of course." 704 F.2d 943, 948–49 (7th Cir. 1983) (overruled on other grounds by *Brunson v. Murray*, 843 F.3d 698 (7th Cir. 2016)). From there, "it [wa]s only a step to equating nonrenewal with revocation and requiring the same safeguards against arbitrary nonrenewal as the statute expressly provides against arbitrary revocation." *Id.* at 949. In another context, the Eighth Circuit concluded that a "licensing scheme which limits the City's discretion to deny renewal[] creates a protected property interest" where "[a]n applicant seeking renewal of a rental license . . . need only meet three objective criteria to qualify." *Stauch v. City of Columbia Heights*, 212 F.3d 425, 430 (8th Cir. 2000).

Case 2:19-cv-01796-JPS   Filed 09/22/20   Page 13 of 27   Document 34

Wis. Stat. § 343.16(3)(a) explains that, subject to certain exceptions not applicable here,

> [t]he department shall examine every applicant for the renewal of an operator's license once every 8 years. The department may institute a method of selecting the date of renewal so that such examination shall be required for each applicant for renewal of a license to gain a uniform rate of examinations. Subject to par. (am) [which exempts applicants for probationary Class D licenses], the examination shall consist of a test of eyesight . . . In lieu of examination, the applicant may present or mail to the department a report of examination of the applicant's eyesight by an ophthalmologist, optometrist or physician licensed to practice medicine. . .the department shall decide whether, in each case, the eyesight reported is sufficient to meet the current eyesight standards.

The statute further provides that a "special examination" may be requested to "determine incompetency, physical or mental disability, disease, or any other condition that might prevent such applicant or licensed person from exercising reasonable and ordinary control over a motor vehicle." Wis. Stat. § 434.16(5)(a). While the statute confers some discretion on WisDOT as to whether to *require* a medical examination, there is no discretion to actually *conduct* such an examination. *Id.* Moreover, in the event that WisDOT determines that additional testing (such as a knowledge or skills test) is warranted, the statute requires a temporary license to be issued. *Id.* § 343.16(6)(b).

The Court finds that the statutory scheme is sufficiently precise and non-discretionary so as to create an expectation of entitlement in the license renewal. The statute only requires an eye examination for renewal unless WisDOT orders a medical examination or retesting. Thus, under the statute's renewal scheme, Wobschall's reasonable expectations would have

Case 2:19-cv-01796-JPS   Filed 09/22/20   Page 14 of 27   Document 34

been (1) a renewal of her license; (2) a possible medical examination referral followed by either a renewal or a denial with notice and an opportunity to be heard; or (3) notice of possible retesting and an interim temporary license.

The complaint alleges that WisDOT eschewed these statutorily prescribed protocols in favor of an ad-hoc and unpermitted physical examination that required Wobschall to walk across the room without the aid of her mobility device and without the supervision of a medical professional. When she was unable to do this, WisDOT erroneously concluded that she could not renew her license that day. It was only *after* this refusal to renew the license that WisDOT gave her a document requiring her to undergo a medical examination. This was not in conformity with Wisconsin's statutory scheme on license renewal, and made it far more difficult for Wobschall to renew her license. Specifically, as a result of her fall, Wobschall suffered injuries, a surgery, and a recovery period. Instead of being able to receive the medical examination and timely renew her license—as the statute contemplates—Wobschall spent the remainder of June in surgery and recovery *because* WisDOT failed to follow its own statutory requirements. For these reasons, the Court concludes that the second amended complaint adequately alleges that Wobschall suffered a procedural due process violation when she was prevented from renewing her license per WisDOT's procedures.

### 3.2.2.2   Substantive Due Process

Substantive due process is a concept that has developed to protect against certain state actions regardless of the fairness of any procedural protections the plaintiff was afforded. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998); *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It arises when

state action infringes upon a fundamental liberty interest, *Reno v. Flores*, 507 U.S. 292, 302 (1993), or when state action is "arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). When fundamental rights are involved, a challenged action must survive strict scrutiny, meaning it must be narrowly tailored to a serve a compelling state interest. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Otherwise, the reviewing court employs only rational basis review, asking whether the action in question is rationally related to a legitimate state interest. *Lee v. City of Chi.*, 330 F.3d 456, 467 (7th Cir. 2003); *Romer v. Evans*, 517 U.S. 620, 631 (1996).

Plaintiff does not argue that a fundamental right is at issue; therefore, in order to state a claim for a violation of Wobschall's substantive due process rights, the second amended complaint must allege facts indicating that the state action was egregiously arbitrary. *See Dunn v. Fairfield Comm. High Sch. Dist. No. 225*, 158 F.3d 962, 966 (7th Cir. 1998). In other words, it must allege that the challenged action "shocks the conscience" and is "unjustifiable by any governmental interest." *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002) (quotation omitted).

Plaintiff alleges that Wobschall was denied the right to renew her license when an arbitrary condition—one she could not meet due to her disability—was imposed in lieu of the typical statutory renewal scheme. This arbitrary condition required her to demonstrate that she, an elderly woman with knee problems, could walk across a room without her mobility device. This was not a standard practice, nor was it permitted by any of the statutes. Moreover, there was no clear reason for this requirement, as plenty

of people who cannot walk easily are perfectly capable of driving. In any event, had there been serious concerns as to Wobschall's ability to operate a vehicle, the statute makes clear that WisDOT was required to order a medical examination—not conduct it.

The state's conduct can be boiled down to a pair of conditional statements. If WisDOT thought that Wobschall was sufficiently mobile that she could move her feet to access a vehicle's pedals, then there would have been no basis for requiring her to undergo a medical examination, much less a demonstration of her mobility. But if WisDOT did *not* think that Wobschall was sufficiently mobile—which is what the complaint alleges—then WisDOT knowingly created a situation in which Wobschall would fall and be seriously injured. That is outrageous. There is no question that this conduct shocks the conscience and violates Wobschall's substantive due process right.

### 3.3    Claim III – Fourteenth Amendment

Having determined that Plaintiff adequately stated a claim against WisDOT for violations of the ADA and Rehabilitation Act, the Court now addresses Plaintiff's free-floating Fourteenth Amendment claim. Plaintiff does not seek injunctive relief, but rather contends that "WisDOT and DMV are liable . . . for payment of any judgment entered in this action because any individual employees of said Defendants were acting within the scope of their employment when the unlawful and unconstitutional conduct, actions, and omissions occurred . . ." (Docket #20-1 ¶ 121). In bringing this claim, Plaintiff does not draw a distinction between WisDOT or Ross, Thompson, or Boardman, the WisDOT officials sued in their official capacities.

Case 2:19-cv-01796-JPS   Filed 09/22/20   Page 17 of 27   Document 34

The Court turns, again, to the three exceptions to Eleventh Amendment Immunity: waiver, congressional abrogation, and the *Ex parte Young* doctrine. *Council 31*, 680 F.3d at 882. Neither WisDOT nor Ross, Thompson, or Boardman have consented to suit, and there is no abrogating statute on point, as there was for the ADA and Rehabilitation Act claims. The only potentially relevant exception to state immunity is under the *Ex parte Young* doctrine, which permits officers of the state to be sued in their official capacities in order to enjoin an unconstitutional act. *Ex parte Young*, 209 U.S. 123, 159 (1908).

At the outset, the Fourteenth Amendment claim cannot proceed against WisDOT because the *Ex parte Young* doctrine only permits suit against officials who act unconstitutionally in their official capacities—not against the state itself. The logic behind *Ex parte Young* is that an unconstitutional state law "conflict[s] with the superior authority of that Constitution" and is therefore void—"[t]he state has no power to impart . . . any immunity from responsibility to the supreme authority of the United States." 209 U.S. at 159–60; *see also Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 685 (1982) ("There is a well-recognized irony in *Ex parte Young*; unconstitutional conduct by a state officer may be 'state action' for purposes of the Fourteenth Amendment yet not attributable to the State for the purposes of the Eleventh."). Thus, for example, "an official who violates Title II of the ADA does not represent 'the state' for the purposes of the Eleventh Amendment, yet he or she nevertheless may be held responsible in an official capacity for violating Title II, which by its terms applies only to 'public entities.'" *Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002) (permitting a claim seeking prospective injunctive

Case 2:19-cv-01796-JPS   Filed 09/22/20   Page 18 of 27   Document 34

relief against officers in their official capacities for violations of Title II of the ADA).

Additionally, *Ex parte Young* permits officials to be sued in their official capacities only for *prospective* injunctive relief, rather than for retroactive damages. 209 U.S. at 159–60. Thus, courts asked to apply the *Ex parte Young* doctrine must "conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Council 31*, 680 F.3d at 882 (quoting *Ind. Prot. & Advocacy Servs v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted)).

As discussed above, Plaintiff seeks "payment of any judgment entered in this action" pursuant to Wis. Stat. § 895.46 for violations of the Fourteenth Amendment. (Docket #20-1 ¶ 121). Plaintiff does not request prospective injunctive relief of the officials, as required by *Ex parte Young*. Therefore, the Fourteenth Amendment claim must be denied. *Council 31*, 680 F.3d at 882.[2] Similarly, declaratory relief is unavailable "where the [E]leventh [A]mendment bars an award of monetary [and] injunctive relief; otherwise, the [declaratory] relief would operate as a means of avoiding the amendment's bar." *Id.* at 884 (quoting *MSA Realty Corp v. State of Ill.*, 900 F.2d 288, 295 (7th Cir. 1993)).

The Court takes a moment to address the specter of a Section 1983/*Monell* claim raised in the pleadings; specifically, the second amended

---

[2]Even if Plaintiff had requested prospective relief, it is not clear that there would have been standing to do so because estates are typically not afforded standing for constitutional claims. *See e.g., Plather v. Health Prof. Ltd.*, No. 04-1442, 2006 WL 1980193, at *4 (C.D. Ill. 2006); *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003).

complaint references a "de facto policy and practice of the DMV and WisDOT" of violating either the ADA, Rehabilitation Act, or the Fourteenth Amendment. *See* (Docket #20-1 ¶¶ 12–14, 54–57, 125, 132, 139). Section 1983 provides that any "person who, under the color of" law, causes a person to be deprived "of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. However, a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "As such, it is no different from a suit against the State itself," and the Eleventh Amendment protects that official's office from suit. *Id.*

In some cases, however, a municipality may be sued for damages under Section 1983 if there is evidence of a widespread policy or custom that is the "moving force" behind the constitutional rights violations. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, *Monell* liability only applies to "local governing bodies,"—not to state agencies, which do not qualify as "persons" for the purposes of Section 1983 relief. *Id.*; *Gleason v. Bd. of Educ. of City of Chi.*, 792 F.2d 76, 79 (7th Cir. 1986); *see also Hallal v. Seroka*, No. 18:cv-388, 2018 WL 3528709, *4 (E.D. Cal. Jul. 20, 2018) (finding that "to the extent that Plaintiff seeks to sue the DMV or its employees in their official capacities, her suit is prohibited by the Eleventh Amendment[,] which bars federal lawsuits brought against state agencies and their employees sued in their official capacities."). Therefore, the complaint cannot state a *Monell* claim against WisDOT for violations of the Fourteenth Amendment by way of Section 1983.

### 3.4 Section 1983 – Violations of ADA and Rehabilitation Act

Plaintiff brings Claims Four and Five against Debbie Hurst, in her individual capacity, for violations of Title II of the ADA and the Rehabilitation Act pursuant to 42 U.S.C. § 1983. Section 1983 may be used as a "[m]echanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (quoting 42 U.S.C. § 1983). "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Id.* at 284. However, "the state may rebut this presumption by showing that Congress 'specifically foreclosed a remedy under § 1983.'" *Id.* at 284 n.4 (quoting *Smith v. Robinson*, 468 U.S. 992, 1004–05 n.9 (1984) (superseded by statute on other grounds)). "The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 121 (2005).

The question of whether § 1983 may be used to enforce a private right of action under the ADA and the Rehabilitation Act is slightly unsettled. Every circuit to consider the issue has held that a plaintiff may not bring a § 1983 lawsuit predicated on a violation of the ADA or the Rehabilitation Act. *Holbrook v. City of Apharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir. 1997) (holding that "a plaintiff may not maintain a section 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA."); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (holding that "Title II's detailed remedial scheme bars [plaintiff] from maintaining a section 1983 action against the

commissioners in their individual capacities for alleged violations of the ADA."); *Lollar v. Baker*, 196 F.3d 603, 610 (5th Cir. 1999) (holding that "because the Rehabilitation Act by its express terms provides comprehensive enforcement and remedial measures for violations of its provisions . . .section 1983 cannot be used as an alternative method for the enforcement of those rights."); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or Section 504 of the Rehabilitation Act."); *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 806 (3d Cir. 2007) (concluding that "§ 1983 is not available to provide a remedy for defendants' alleged violations of [plaintiff's] rights under Section 504 [of the Rehabilitation Act]."); *M.M.R.-Z. ex rel. Ramirez-Senda v. Puerto Rico*, 528 F.3d 9, 13 n.3 (1st Cir. 2008) (explaining that "Section 1983 cannot be used as a vehicle for ADA or other statutory claims that provide their own frameworks for damages.").

Despite these holdings, some discord persists. In *Fitzgerald v. Barnstable School Committee*, the Supreme Court permitted the use of Section 1983 to bring Title IX claims, which upended some of the logic upon which prior decisions regarding the ADA and the Rehabilitation Act were predicated. 555 U.S. 246, 256 (2009). District courts in the Second Circuit, which has yet to take up the issue, illustrate these effects. *Compare Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 335–36 n.9 (E.D.N.Y. 2014) (permitting a Section 1983 claim based on alleged constitutional violations but noting that "the ADA and Rehabilitation Act create enforceable rights indicating that Congress did not intend that plaintiffs would seek redress. . .through the vehicle of § 1983") (citations and internal punctuation omitted) *with*

*Williams v. City of N.Y.*, 121 F. Supp. 3d 354, 371 (S.D.N.Y. 2015) (evaluating the remedial scheme of Title II in light of that in Title IX and the Supreme Court's decision in *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009), and concluding that "a plaintiff can bring a cause of action under § 1983 to enforce rights protected by Title II of the ADA.").

Relatedly, pre-*Fitzgerald*, the District of Columbia held that "a private right of action is available . . . for violations of the ADA, in addition to the right of action arising from the statute itself" in light of legislative history, which evinced a "Congressional intent to preserve the availability of remedies under § 1983." *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Trans. Auth.*, 239 F.R.D. 9, 22–23 (D.D.C. 2006) (but finding no similar private right of action available under the Rehabilitation Act due to a lack of evidence of congressional intent).

Against this backdrop, the Court turns to the relevant precedent to which it is bound. In *Tri-Corp Housing Inc. v. Bauman*, the Seventh Circuit refused to allow a plaintiff to sue a city alderman for violations of the ADA and the Rehabilitation Act under Section 1983, explaining that Section 1983 "cannot be used to alter the categories of persons potentially liable in private actions under the Rehabilitation Act or the Americans with Disabilities Act." 826 F.3d 446, 449 (7th Cir. 2016). The Seventh Circuit distinguished *Tri-Corp* from *Fitzgerald v. Barnstable* by noting that, unlike Title IX, which "lacks a comprehensive remedial scheme that could be displaced by the use of § 1983," the ADA and the Rehabilitation Act "specify in detail who may be sued for damages . . . [therefore,] using § 1983

Case 2:19-cv-01796-JPS   Filed 09/22/20   Page 23 of 27   Document 34

to override the limits of those statutory lists is unwarranted."[3] *Id.*; s*ee also Holmes v. Godinez*, 311 F.R.D. 177, 230 (N.D. Ill. 2015) (concluding that it was "exceedingly likely that plaintiffs may not employ § 1983 to assert statutory violations of the ADA or Rehabilitation Act," but finding that ADA and Rehabilitation Act claims did not preclude simultaneous constitutional claims brought under § 1983).

The Seventh Circuit's conclusion is the same as that reached by the Third, Fifth, Eighth, Ninth, and Eleventh Circuits—namely, that Section 1983 may not be used to bring a private action for violations of the ADA and the Rehabilitation Act. The district court in *Tate v. Dart* subsequently extended *Tri-Corp* to apply to ADA retaliation claims, explaining that "invoking § 1983 to add *individual* liability for ADA retaliation indeed would be a step beyond the remedies provided by the ADA." No. 17-c-8888, 2019 WL 1200740, *4 (N.D. Ill. Mar. 14, 2019) (emphasis in original).

---

[3]Plaintiff suggests that the district court decision in *Tri-Corp* "noted that the city alderman could be sued in his individual capacity under § 1983 for violations of the ADA and Rehabilitation Act if he was 'personally refusing [the plaintiff] access to a federally funded program.'" (Docket #23 at 5 n.5). However, this is not how the decision reads. *Tri-Corp* was a suit against one defendant, alderman Robert Bauman ("Bauman"). After determining that the plaintiff could not "assert a § 1983 claim for violation of these statutes," i.e., the Rehabilitation Act and the ADA, against Bauman, the Court also noted that it "appears that Tri-Corp cannot pursue an ADA or Rehabilitation Act claim against Bauman as an individual" because Bauman did not meet the ADA and the Rehabilitation Act's definition of an entity who may be sued under either statute. No. 12-c-216, 2014 WL 238975, at *8 (E.D. Wis. Jan. 22, 2014). Though perhaps it is clumsily worded, the Court does not read this case to suggest that a Section 1983 claim could be predicated on ADA and Rehabilitation Act violations if the individual sued was "personally" involved in the violations—particularly in light of the robust discussion preceding the section, which found that a Section 1983 claim could *not* be predicated on these statutory violations.

In light of the foregoing analysis, the Court is constrained to reject Plaintiff's Section 1983 claims for violations of the ADA and the Rehabilitation Act. Although there is minor disagreement among district courts throughout the nation, the Seventh Circuit instructs that neither the ADA nor the Rehabilitation Act are written in such a way as to give rise to a private cause of action under Section 1983. Therefore, the Section 1983 claims against Hurst, which are predicated on violations of the ADA and the Rehabilitation Act, must be rejected, and the motion to amend will be denied on this point.

### 3.5     Section 1983 – Fourteenth Amendment Violation

Plaintiff has adequately stated a claim against Hurst for a Fourteenth Amendment violation pursuant to Section 1983. As discussed above, Section 1983 may be used to enforce violations of constitutional rights visited upon plaintiffs by individuals acting under the color of law. 42 U.S.C. § 1983. As explained in detail in Section 3.2, *supra*, Plaintiff has adequately alleged violations of her procedural and substantive due process rights under the Fourteenth Amendment's due process clause. Those discussions are incorporated here, as they pertain to Hurst. Hurst was the individual who, acting in her authority as a WisDOT and DMV official, forced Wobschall to walk across the room without her mobility device in order to renew her license, despite the fact that this dramatically deviated from license renewal protocol. As the individual responsible for this violation, she may be personally liable for damages, including punitive damages, that resulted from her conduct.

### 3.6     Claim VII – Punitive Damages

Plaintiff's claims for "punitive damages" must be rejected because damages are a remedy, not a cause of action. *Brown v. Maxey*, 124 Wis. 2d

426, 431 (Wis. 1985). While Plaintiff may be eligible to receive punitive damages on the Section 1983 claim against Hurst, the cause of action for "punitive damages" cannot proceed—the concept of "punitive damages" cannot be tacked onto a complaint to make punitive damages available where they otherwise are not. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (explaining that compensatory damages, but not punitive damages, are available under the ADA and the Rehabilitation Act).

### 4.    CONCLUSION

While Plaintiff has more than adequately pled facts giving rise to Defendants' liability, one size does not fit all as to the specific claims. For the reasons explained above, Plaintiff may proceed against WisDOT on Counts One and Two, which are the claims brought under the ADA and the Rehabilitation Act for compensatory damages. Additionally, Plaintiff may proceed against Hurst individually on Count Six, the Section 1983 claim for violations of Wobschall's Fourteenth Amendment procedural and substantive due process rights. However, Count Three, which purports to bring a Fourteenth Amendment claim for damages against the state, and Counts Four and Five, which attempt to bring Section 1983 claims against Hurst based on violations of the ADA and the Rehabilitation Act, must be rejected. Finally, Count Seven will also be rejected, as "damages" are a remedy, not a cause of action.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss for failure to state a claim (Docket #10) be and the same is hereby **GRANTED in part and DENIED in part**;

**IT IS FURTHER ORDERED** that Defendants' motion to stay discovery (Docket #12) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend the complaint (Docket #20) be and the same is hereby **GRANTED** as stated in the text of this Order;

**IT IS FURTHER ORDERED** that the second amended complaint (Docket #20-1) be and the same is hereby the operative complaint to the extent stated in this Order;

**IT IS FURTHER ORDERED** that Claims Three, Four, Five, and Seven be and the same are hereby **DISMISSED** from the second amended complaint;

**IT IS FURTHER ORDERED** that defendants Dave Ross, Craig Thompson, Kristina Boardman, and the State of Wisconsin Division of Motor Vehicles be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that the parties' joint motion to amend the trial scheduling order (Docket #33) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the dates set forth in the Court's trial scheduling order (Docket #15) be and the same are hereby **VACATED**.

Dated at Milwaukee, Wisconsin, this 22nd day of September, 2020.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge